UNITED STATES ex rel. D'AMATO v. WILLIAMS.

(District Court, S. D. New York. July 12, 1909.)

1. ALIENS (§ 53*)—"STOWAWAY."

A "stowaway," within rule 23 of the Commissioner General of Immigration relating to the disposition of alien stowaways, is one who steals his passage.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 7, p. 6679.]

2. HABEAS CORPUS (§ 23*)—SUBJECTS OF RELIEF—IMMIGRATION.

Habeas corpus lies to procure the release of an alien immigrant who is detained as an alleged stowaway and is about to be deported without any hearing by the board of special inquiry or appeal to the Commissioner of Immigration, where he denies that he is a stowaway.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** HABEAS CORPUS (§ 105*)—IMMIGRATION—POWER OF COURT.

A federal district judge, having once taken jurisdiction of habeas corpus proceedings to procure the release of an alien immigrant detained as a stowaway, must dispose of the question as to the alien's right to freedom.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 93, 94; Dec. Dig. § 105.*

Jurisdiction of federal courts, see note to In re Huse, 25 C. C. A. 4.]

**4.** HABEAS CORPUS (§ 23*)—"UNLAWFUL IMPRISONMENT"—WHAT CONSTITUTES.

Unlawful deprival of an alien's right to enter the country constitutes "unlawful imprisonment," to obtain freedom from which habeas corpus lies.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 8, p. 7190.]

**5.** ALIENS (§ 46*)—DEPORTATION—GROUNDS.

Immigration Act Feb. 20, 1907, c. 1134, § 19, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 458), authorizing deportation of aliens brought to this country in violation of law, does not authorize deportation of an alien innocently brought in through the unlawful act of the ship's master in omitting his name from the ship's manifest.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

**6.** ALIENS (§ 54*)—DEPORTATION—GROUNDS.

Under the express provisions of Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 448), an alien detained for deportation, who admits that his passage into the country was paid for by and that he was assisted by others, must show affirmatively and satisfactorily that he does not belong to one of the excluded class of aliens.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

Habeas corpus proceedings by the United States of America, on relation of Francesco D'Amato, against William Williams. Order entered.

In this case the relator obtained the writ of habeas corpus to relieve his brother from detention by the immigration authorities at Ellis Island. He alleges that his brother is detained as an alleged stowaway and is about to be deported to Italy, from which he came, without any hearing by the board of special inquiry or appeal to the commissioner. The return concedes that the alien will be deported without any hearing before a board of special inquiry, and gives as a ground that the alien is a stowaway under rule 23 promulgated by the Commissioner General of Immigration. In an affidavit in support of the petition, the alien himself alleges that he paid for his passage on shore and was rowed to the ship by a man in a boat, that he ate and slept with the passengers all the way over, and was unaware that he was in any way stealing his passage. Rule 23 promulgated by the commissioner is as follows:

"Rule 23. Alien stowaways.—The immigration act contains no provision relating in terms to stowaways, and the sections thereof prescribing inspection of applicants for admission do not, as a general rule, cover their cases. There are two good and sufficient reasons for refusing to examine stowaways: (1) By stealing passage they not only evade on their own account, but make it impossible for vessel officials to observe the mandatory terms of sections 9 and 12 to 15, requiring medical inspection and detailed manifesting at the foreign port of embarkation, so that they occupy the status of persons who have failed to comply with plain provisions of law, an observance of which is necessary to a proper inauguration of their in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

spection under section 16; and (2) even aside from the fact that stowaways thus come before the immigration officials as violators of the law, they are persons obviously falling within the excluded classes named in section 2 in every instance, at least to the extent that they are persons who are 'assisted by others to come,' and with respect to whom it would be practically impossible to show 'affirmatively and satisfactorily' that they do not belong to the excluded classes. Therefore, alien stowaways shall not, as a rule, be examined or permitted to land at ports of the United States, nor shall head tax be certified on their account. The masters of vessels immediately upon arrival shall report to the immigration officer in charge the names of any alien stowaways on board, and shall take every precaution to prevent their landing, subject to the penalty prescribed by section 18, holding them on board the vessel until it departs from the United States. While these regulations cover all ordinary cases of stowaways and will in practice be found to be of almost universal application, yet cases may rarely arise in which the alien, though a stowaway, may nevertheless be entitled to inspection and to admission if found to belong to none of the excluded classes. For example, the alien, though originally a stowaway, may have been, because of the particular facts of his case, accepted by the vessel as a passenger and manifested in such a way as to substantially comply with the law, or may have been employed as a member of the crew, or the causes which led the alien to stowaway may have been such as to bring his case within the first proviso to section 2 of the immigration act, and entitle him to special consideration. Exceptional cases of this character should be promptly brought to the attention of the department, with a full statement of facts and a request for instructions."

Section 22 of the act gives the following power to the Commissioner General of Immigration, under the direction to the Secretary of Commerce and Labor:

"He shall establish such rules and regulations, * * * not inconsistent with law, as he shall deem best calculated for carrying out the provisions of this act. * * *"

Wm. H. Weissager, for relator.
Daniel D. Walton, Jr., for commissioner.

HAND, District Judge (after stating the facts as above). [1] I think it is quite clear that in rule 23 the word "stowaway" is used to indicate one who steals his passage, and I do not mean to decide whether that rule is valid or not, for I do not think it is necessary here. Possibly one who steals his passage, and who concedes that he steals his passage, may be deprived of a hearing before a board of special inquiry. I am not prepared to say that that board is necessary where there is nothing for them to decide. If the alien concedes such facts, perhaps any hearing is unnecessary. It is quite true that the statute makes no exception to the necessity of a board of inquiry in the case of any alien; where its terms clearly could not have been meant to apply, possibly I need not follow its formal letter. This, however, is an academic question at present, as I view it.

[2] It is enough here that this person is an alien. I do not think that aliens are only those who may be registered by the ship's master in the manifest of passengers required by the act. If this were true, the immigration authorities would have no right whatever to keep the alien in custody at all, for their powers extend only to those who are described as aliens in the act. This man does not concede that he is a stowaway within the meaning of the rule. He has been denied any hearing before the board of special inquiry, and at least he

was entitled to a determination upon that issue. As that hearing has been denied him, he has been denied rights due to him under the statute, and I think the writ must go.

[5-6] The question must then be determined: What further disposition shall be made? Under Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, it seems to me that, once I have taken jurisdiction, I must dispose of the question as to the alien's freedom. It is true that the issue there was citizenship; but the character of the issue is irrelevant, so long as upon it depends the right of the relator to enter the country, the unlawful deprival of which right is, under Chin Yow v. United States, supra, an unlawful imprisonment. Mr. Weissager suggests that I may send him back to the immigration authorities with direction for hearing before the board of special inquiry; but this presupposes a right of review of their proceedings, which I do not understand I have. I think but one question is to be determined by me, and that is whether he is wrongfully detained. The preliminary question, in determining that, is whether he has been denied the right which the statute vouchsafes him. Then, if I decide he has been denied these, I must determine whether he is entitled to his enlargement, and that question brings up whether he is excluded within the terms of the statute or not. I cannot determine that question without further facts, and, in order to obtain those facts, there must be a hearing. The question will arise whether an alien may be deported who is innocently brought to this country in violation of law under the meaning of section 19. I have not yet proof before me that he was not upon the ship's manifest, but let us suppose that he was not. Was it the intention of the act that an alien should be deported in case the ship's master failed to include him in the manifest, either willfully or negligently?

There is no question but that under section 18 an alien landed at another place than that designated by the immigration officer shall be deported, for the act so states. The provisions in regard to manifests, however, contain no such provision, although, like section 18, they provide for penalties upon the ships' masters who fail to enter the aliens. I think I cannot disregard the distinction between the way these sections are framed. It is true that under section 19 the alien is literally "brought to this country in violation of law." If that is enough to authorize the deportation of an alien innocently brought in through the unlawful act of the ship's master, then the provision, under section 18, was unnecessary, for either section 19 governed it, or sections 20 and 21, and both had general provisions for deportation. The special provision laid down for the enforcement of manifests, which contain no provision for deportation, seems to me to indicate that Congress meant to limit the first words of section 19 to the excluded classes mentioned in section 2. I confess I have some readiness to accept this construction of the law, as I am not inclined to visit the sins of the ship's master upon the alien, provided they are not in privity with him. I quite realize the difficulty in all cases of determining whether such collusion exists; but the ship's masters are under heavy penalties, and it must be nearly always quite easy to

ascertain whether they violated the provisions of their manifests or not. I do not think, therefore, if it shall be disclosed upon the hearing that the alien was not upon the ship's manifest, he is therefore within section 19, and can be deported. He frankly concedes that his "ticket or passage is paid for with the money of another," and that he has been "assisted by others to come." It will therefore be necessary for him to show both "affirmatively and satisfactorily" that he does not "belong to one of the foregoing excluded classes." Section 2.

I shall therefore direct a hearing to determine whether the alien is one who should be deported under the immigration laws. In determining this, I will consider first whether he is within any of the excluded classes in section 2, and will decide whether he affirmatively and satisfactorily shows that he is not. I will also decide whether the alien made any effort to conceal his passage, or whether he acted in collusion with the ship's master to have his name omitted from any manifest required by the act, if that were done. If I find that the alien made any effort to enter the country surreptitiously or as party to any plan for the violation of its laws in entry, I will remand him.