UNITED STATES ex rel. HUBER v. SIBRAY, Immigrant Inspector.

(Circuit Court, W. D. Pennsylvania. April 9, 1910.)

No. 2.

1. ALIENS (§ 54*)—ULAWFUL ENTRY—DEPORTATION WARRANT.

Though a warrant for the arrest of an alien in deportation proceedings is not required to have the formality and particularity of an indictment, a warrant charging that relator was an alien who was a member of the excluded classes, in that he imported a woman for immoral purposes, and that he had been convicted of or had admitted having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry, into the United States, was fatally defective for failure to specify the specific act or acts which it was claimed brought relator within the excluded classes.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** ALIENS (§ 54\*)—DEPORTATION PROCEEDINGS—ARREST—WARRANT—RULES.

Immigration Rule 35, par. "b," providing that a warrant for the arrest of an alien in deportation proceedings must be based upon a full statement of the facts showing the alien's presence in the United States in violation of law, the warrant must state facts constituting the illegal residence, and not mere conclusions.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.\*]

**3.** ALIENS (§ 54\*)—DEPORTATION—HEARING—PROCEDURE.

Immigration Rule 35, par. "e," provides that, after the arrest of an alien in deportation proceedings, he shall have full opportunity to show cause why he should not be deported; that he shall be apprised of his right to counsel, and he and his counsel may inspect all evidence on which he was arrested and be given an opportunity to offer evidence and submit an argument and to inspect and copy the record and the findings. *Held*, that such provision contemplates a hearing at which the alien must be present and be confronted with the witnesses against him, and have a full opportunity for cross-examination.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.\*]

**4.** ALIENS (§ 46\*)—EXCLUDED CLASSES—CRIMINALS.

Proof that an alien, prior to his immigration, committed a single act of fornication or adultery in the country from which he emigrated, was insufficient to justify his deportation as an alien having been convicted of or having admitted committing a felony, or other crime or misdemeanor involving moral turpitude.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 46.\*]

**5.** ALIENS (§ 53\*)—DEPORTATION—GROUNDS.

That an alien is living in adultery within the United States is not ground for deportation; such conduct being solely within the police power of the state.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

Habeas corpus by the United States, on the relation of Hans Huber, to obtain his release from custody of W. W. Sibray, Immigrant Inspector, under deportation warrant. Writ granted, and relator discharged.

John L. High and Wm. D. Grimes, for relator.

John H. Jordan, U. S. Atty., for Inspector.

ORR, District Judge. Upon petition of Hans Huber this court issued a writ of habeas corpus to an immigrant inspector of the Department of Commerce and Labor of the United States government. The petition shows that petitioner, a citizen of Austria, arrived at New York on October 2, 1907, came to Pittsburgh, in this district, on October 4, 1907, and has remained in Pittsburgh ever since; that he is a confectioner and baker and has been employed as such; and that he is skilled, sober, peaceful, and industrious. It further appears that on November 13, 1909, he was arrested by the respondent by virtue of a warrant of arrest issued by the Acting Secretary of Commerce and Labor in pursuance of which a hearing was had with the result that an order of deportation was issued. The petition also contains averments that the charges upon which the arrest was made are untrue, unjust, and not sufficient under Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), that

"the order of deportation is without jurisdiction," and that petitioner is unlawfully restrained of his liberty.

The answer of the respondent does not deny in any material respect any of the allegations of the petition, but justifies the detention of the relator by reason of the warrant of arrest, the hearing, and the warrant of deportation. It is true the answer sets up that the petitioner is out on bail, the condition of which is that the petitioner shall be produced to the respondent on demand. This seems immaterial, for such constructional custody became actual at the time of the hearing because of the presence of the petitioner in court. It is well settled that Congress has power to' expel aliens, as well as to exclude them, and that such power may be exercised entirely through executive officers. By the immigration act of 1907 the exercise of such power has been imposed upon the Secretary of Commerce and Labor.

Section 20 provides:

"That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States."

The same section also provides that such alien may give bond conditioned for his production when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, etc.

Section 21 provides:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section twenty of this act."

Section 22 provides that the Commissioner General of Immigration shall, under the direction of the Secretary of Commerce and Labor, establish such rules and regulations, prescribe such forms of bonds, reports, entries, and other papers, and shall issue from time to time such instructions, not inconsistent with law, as he shall deem best calculated for carrying out the provisions of this act, etc.

In pursuance of the provisions of said section 22, rules and regulations have been established for the enforcement of the law. It is proper to consider rule 35, which regulates the procedure in the deportation of aliens other than those who are found to have become public charges from causes existing prior to landing. In brief, paragraph "a" provides that each application for a warrant of arrest must be accompanied by the certificate of the landing or entry. Paragraph "b" is as follows:

"A full statement must be made in every such application of the facts, supported if practicable by affidavits, which show the presence in the United States of the alien whose arrest and deportation is sought to be in violation of law."

Paragraph "d" provides that telegraphic application for warrants "should be avoided as far as possible," but may be made if the cir-

cumstances of any particular case make it absolutely necessary to resort thereto. It concludes with the following:

"The statement of facts, contained in the telegraphic application, therefore, must be sufficiently complete and specific to form the basis of the formal warrant."

Paragraph "e" is as follows:

"If, upon the receipt of any such application and certificate or of the request by wire provided for in paragraph (d), either completely in conformity with these regulations or accompanied by a satisfactory explanation of inability to comply therewith, it appears to the Secretary that the alien whose arrest and deportation is sought is in the United States unlawfully and that the time within which he can be deported has not expired, a warrant for his arrest will be issued directing that he be taken before an officer or officers named therein, and there be given full opportunity to show cause, if there be any, why he should not be deported, and as soon as arrested said alien shall be apprised of his right to be represented by counsel, and he and his counsel shall have the right to inspect all the evidence upon which the Secretary has acted in directing said alien's arrest, and be given an opportunity to offer evidence and submit an argument in his behalf, and be given an opportunity to inspect and make a copy of the report of the hearing and of the findings of the officers before whom it is held. In case said alien is unable to understand or to speak the English language, an interpreter shall, if possible, be secured for the hearing, authority for payment of a reasonable compensation to be obtained by special request therefor; and in the event that the alien is physically or mentally incapable of testifying, his relatives, friends, or acquaintances shall be questioned."

Paragraph "h" is as follows:

"If, after the receipt of the report of such hearing, it shall appear to the satisfaction of the Secretary, from all the evidence, that such alien is in the United States in violation of law and that the time within which he can be deported has not expired, a warrant will be issued for his deportation."

Paragraph "i" is as follows:

"Officers are directed to make thorough investigation of all cases where they are credibly informed, or have reason to believe, that a specified alien is in the United States in violation of law. It is not permissible for officers to resort to any form of intimidation, by threats, violence, or otherwise, in order to extort from any suspected alien or from any other person the information to be embodied in the application for the warrant of arrest. Officers are specially cautioned not to lend their aid in causing the arrest of aliens upon charges arising out of personal spite or enmity, unless the truth of such charges is clearly established."

It is unnecessary to cite any of the numerous decisions that proper rules and regulations adopted by an executive department of the government, in pursuance of the provisions of an act of Congress, have the force and effect of the act itself. It remains, therefore, the sole duty of the court to determine whether or not the proceedings for the deportation of the relator have been according to law. If they have, he must be remanded. If they have not, he must be released.

First. The warrant of arrest recites the following as the charge upon which it rests:

"Whereas, from evidence submitted to me it appears that Hans Huber, alien, who landed at the port of New York per S. S. Pretoria, on the 4th day of October, 1907, has been found in the United States in violation of the act of Congress, approved February 20. 1907, to wit, that the said alien is a member of the excluded classes, in that he imported a woman for an immoral pur-

pose, and that he has been convicted of or admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States."

To find what the excluded classes are reference must be made to section 2 of the act of Congress, of which the following is a material part for present purposes:

"That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons, and persons who have been insane within five years previous; persons who have had two or more attacks of insanity at any time previously; paupers; persons likely to become a public charge; professional beggars; persons afflicted with tuberculosis or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such mental or physical defect being of a nature which may affect the ability of such alien to earn a living; persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; polygamists, or persons who admit their belief in the practice of polygamy, anarchists, or persons who believe in or advocate the overthrow by force or violence of the Government of the United States, or of all government, or of all forms of law, or the assassination of public officials; prostitutes, or·women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose; persons who procure or attempt to bring in prostitutes or women or girls for the purpose of prostitution or for any other immoral purpose; persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled; those who have been, within one year from the date of application for admission to the United States, deported as having been induced or solicited to migrate as above described; any person whose ticket or passage is paid for with the money of another, or who is assisted by others to come, unless it is affirmatively and satisfactorily shown that such person does not belong to one of the foregoing excluded classes, and that said ticket or passage was not paid for by any corporation, association, society, municipality, or foreign government, either directly or indirectly; all children under sixteen years of age, unaccompanied by one or both of their parents, at the discretion of the Secretary of Commerce and Labor or under such regulations as he may from time to time prescribe."

I am constrained to hold that the charge is not sufficiently specific. It is not required that the warrant of arrest should have the formality and particularity of an indictment, but it should give to the alien sufficient information of the specific act or acts which bring him within the excluded classes, so that he can offer testimony in refutation of the charge at the hearing directed to be had by the warrant of arrest in pursuance of the act of Congress and the rules of the department. What woman is he charged with importing and for what immoral purpose? Was he convicted of or did he admit the commission of a crime? Was it a felony or other crime or misdemeanor involving moral turpitude? If either, which was it? By paragraph "b," Rule 35, as has been seen, a full statement of the facts must be the basis of the warrant. It is contemplated, therefore, that facts, and not conclusions, must be set forth in the warrant.

Second. The hearing provided for should be according to established precedent, because that is contemplated by the act and regulations. Paragraph "e" of rule 35, as has been seen, contemplates the employ-

ment of counsel, offers of evidence, and arguments on behalf of the alien. In the case at bar it does not appear upon what information the warrant of arrest issued. After the arrest three separate hearings were had by the immigration inspector at which testimony was taken. At the first only was the relator present. Of the second and third he had no notice, although at each a witness was sworn and examined. Upon the testimony thus taken the order of deportation was issued. It is clear that such proceedings were contrary to law. The act provides for the production of the alien at the hearing or hearings. It is fundamental procedure that witness and accused be brought face to face, and it is also fundamental that opportunity for cross-examination should be given. I am therefore of opinion that the hearings were not held according to law.

Third. There do not appear to have been found any facts which show that the alien is in the United States in violation of law. The charge of importing a woman for an immoral purpose, stated in the warrant of arrest, appears to have been abandoned. The warrant of deportation expresses the finding as follows:

"Whereas, from proofs submitted to me after due hearing before Immigrant inspector W. W. Sibray, held at Pittsburgh, Pa., I have become satisfied that Hans Huber, alien, who landed at the port of New York per S. S. Pretoria, on the 4th day of October, 1907, is in this country in violation of the act of Congress approved February 20, 1907, to wit, that the said alien is a member of the excluded classes, in that he admits having committed a felony or other crime or misdemeanor involving moral turpitude, prior to his entry into the United States."

There is no finding that any particular felony, crime, or misdemeanor prior to entry was admitted. At the hearing upon the return of this writ the relator offered to produce testimony in support of his petition, but the court refused to receive any evidence because questions of fact were committed by the act to the Secretary of Commerce and Labor, and because the respondent did not ask that testimony be received. I have gone over the testimony taken by the inspector, and do not find any evidence that the relator was convicted of or admits the commission of any offense which can be embraced within the general language of the warrants.

The relator is married, and lived with his wife in Vienna until he left for the United States. He did admit the commission of one act of sexual intercourse with an unmarried woman shortly before leaving Vienna. That is all the record discloses as to his conduct prior to his landing at New York. That act is to be deprecated; yet it was not a felony or crime under the law. It is doubtful if adultery was an offense at common law in this country. It was not in Vermont, Virginia, and South Carolina. See Wharton's American Criminal Law, § 2648. It is doubtful if the act of the relator was adultery in Austria. Under the Roman law to constitute the offense the woman must be married. The same is the law in many places. It is doubtful, also, if fornication was a misdemeanor at common law. The better opinion is that in the absence of statute, unless the offense partakes of the nature of public and offensive lewdness, it is not indictable. See Wharton's American Criminal Law, § 2667; also, Clark's Criminal

Law, Hornbook Series, 312, and authorities cited in footnotes. From the opinion of Judge Gibson of Pennsylvania in Maurer v. Mitchell, 9 Watts & S. 69, it will be seen that the offense of fornication and bastardy was "little more than a private wrong." See, also, Rohrheimer v. Winters, 126 Pa. 253, 17 Atl. 606. Although unpleasant to .thus elaborate this subject, I am constrained to do so in order to prevent a wrong to the relator.

It is admitted by the respondent that the relator "is an expert at his business and seems to be a very steady and reliable man. His employer speaks of him in the very highest terms." That deportation should be the punishment of such a man for such an offense is almost incredible.

But it is said that he is now living in this district as the husband of the woman who followed him to this country, and is now supporting her and her two children, born to him since her arrival. The answer to that is that the police power of the state of Pennsylvania must have control of those who offend against her laws. Not yet has the United States usurped the police power of the several states over aliens who are lawfully within the United States. See Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737.

The alien must be released, and it is so ordered.