UNITED STATES ex rel. HUBER v. SIBRAY, Immigrant Inspector.

(Circuit Court, W. D. Pennsylvania.   April 9, 1910.)

No. 1.

1. ALIENS (§ 54*)—DEPORTATION—WARRANT.
   A warrant for the arrest of an alien charging that she was a member of the excluded classes, in that she entered the United States for an immoral purpose, was not sufficiently specific.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

2. ALIENS (§ 54*)—DEPORTATION PROCEEDINGS—HEARINGS.
   Hearings in deportation proceedings of which the alien had no notice and was given no opportunity to be present, at which witnesses were sworn and examined, were improper.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—DEPORTATION WARRANT—REQUISITES.
   Where a deportation warrant stated that the alien was a member of the excluded classes, in that she entered the United States for an immoral purpose, and admitted having committed a felony or other crime or misdemeanor prior to her entry, it was insufficient, there being no finding that any particular felony, crime or misdemeanor had been so committed, nor as to her purpose in coming to the United States.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

4. ALIENS (§ 51*)—DEPORTATION—GROUNDS.
   That an alien committed a single act of fornication abroad before she emigrated, and thereafter was living in fornication within the state of Pennsylvania with a man who was not her husband, contrary to the laws of that state, was not subject to exclusion.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 51.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** CITIZENS (§ 3*)—CHILDREN BORN IN THE UNITED STATES.

Where two children were born to a female alien after her entry into the United States, the children were citizens and not subject to deportation, either in proceedings for the deportation of the mother, or at all.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. § 2; Dec. Dig. § 3.*]

Habeas corpus by the United States, on the relation of Hans Huber, to obtain her discharge from custody of W. W. Sibray, Immigrant Inspector, under deportation warrant. Writ granted, and relator discharged.

John L. High and Wm. D. Grimes, for relator.
John H. Jordan, U. S. Atty., for W. W. Sibray.

ORR, District Judge. The relator is a native of Austria, having arrived in New York November 23, 1907, and in this district November 26, 1907, where she has remained ever since, and where for six months or so after her arrival she was employed at her occupation of confectioner and baker. On November 13, 1909, she was arrested in pursuance of a warrant of arrest issued by the Acting Secretary of Commerce and Labor. She avers the unlawfulness of her arrest and restraint, and that she is about to be deported in pursuance of an order of deportation, which she avers "is without jurisdiction." The respondent answers that the relator is a member of the excluded classes of aliens defined in the immigration act of February 20, 1907, and that by proceedings in conformity with said act and with the rules and regulations of the Department of Commerce and Labor she is lawfully to be deported to the place whence she came.

In United States of America ex rel. Hans Huber v. Immigrant Inspector of the Department of Commerce and Labor of the United States Government, at No. 2, April Term, 1910 (178 Fed. 144), I have this day handed down an opinion in which the requirements of said act and rules and regulations as to the procedure for the deportation of an alien have been considered at some length. The relator here was arrested at the same time as the relator in that case and hearings as to both were held at the same time. A great deal, therefore, which is said in that case is applicable to the case at bar and need not be repeated here. The only question before the court is whether the proceedings for the deportation of the relator have been according to law.

First. The warrant of arrest charges the relator with being a "member of the excluded classes, in that she entered the United States for an immoral purpose." As in the Huber Case, I am constrained to hold that the charge is not sufficiently specific. There is no sufficient information afforded to the alien as to the charge, to refute which she can offer testimony at the hearing contemplated to be held.

Second. As in the Huber Case, after the arrest there were three hearings, of two of which the relator had no notice and was not given an opportunity of being present, although at each of said hearings a witness was sworn and examined. For these reasons the hearings were not held according to law.

Third. There do not appear to have been found any facts which show that the relator is in the United States in violation of the immigration law. The warrant of deportation expresses the finding to be "that the said alien is a member of the excluded classes, in that she entered the United States for an immoral purpose, and that she admits having committed a felony or other crime or misdemeanor prior to her entry into the United States." There is no finding that any particular felony, crime or misdemeanor was committed prior to entry, nor is there any finding as to what the purpose of the alien was in coming to the United States. Inasmuch as, under the act, questions of fact are committed to executive officers of the department, this court refused to hear testimony on the part of the relator. No request of that kind was made on behalf of the government. I have, however, gone over the testimony taken by the inspector, but fail to find any evidence that the purpose of the relator in coming to this country was immoral, or that she was convicted of or admits the commission of any offense which can be embraced within the general language of the warrant of deportation. The alien did admit the commission of one act of sexual intercourse in Vienna before coming to this country, but for the reasons expressed in the Huber Case that single act cannot be embraced within the offenses prescribed by the immigration act.

As to her purpose in coming to this country, the evidence discloses that some time prior to her departure from Austria she had intended coming to the United States; that the money for her to come was furnished by Louis Yost, at that time an alien residing in Pittsburgh; and that, when she came to this country, she made her home with said Yost and his wife, and worked as confectioner and baker for six months after her arrival. Then approaching confinement caused her to give up her work, and she went to live in a house provided for her by the reputed father of the expected child. Since that time she has lived with him as his wife, and she is now the mother of two children by him. Had she come to this country with the man who is now providing for her, or had she immediately upon her arrival taken up her residence with him, it might have been inferred from the evidence that relations were continuing which had formerly existed, but from the testimony taken at the hearing no such inference can be drawn. The immigrant inspector states in a report which is part of the record filed in the Huber Case: "I was impressed with the modest bearing and appearance of the woman." It is true that this relator is now living with a man who has been providing for her as his wife in violation perhaps of the laws of Pennsylvania, but I find that the United States has not yet usurped the police power of the states over aliens who are lawfully within the country. See Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737.

There is another feature of this case. The woman is the mother of two very young children, both born in the United States. They are therefore citizens of the United States, and the Commissioner of Immigration has been directed to have those children "conveyed to New York to be returned on the steamship with the mother." It is per-

haps not necessary to do more than to allude to this phase of the case because what I have said previously, I think, is sufficient, but it does seem that there is a tendency to disregard the rights both of the mother and the children, who are entitled to remain in this country and who need their mother's care and protection. It was admitted at the hearing that the immigration officer who made the arrest recommended that no steps should be taken for the deportation of the mother.

The petitioner should be released from custody, and it is so ordered.