IN THE MATTER OF THE APPLICATION OF TSURU TOMIMATSU FOR A WRIT OF HABEAS CORPUS.

September 17, 1912.

1. *Right of alien to land claimed on the ground of domicil—Denial on a question of law—Habeas Corpus:* Where the right of an alien to enter the United States is claimed on the ground of domicil, a denial

thereof by the immigration officers on a question of law, may be reviewed on an application for a writ of habeas corpus.

2. *Jurisdiction of immigration officers—Habeas corpus:* When proceedings before immigration authorities show that they have acted without jurisdiction, relief may be had by writ of habeas corpus.

3. *Domicil—Residence—Intention:* Residence in a certain locality for a period of years with one's family and the conduct of regular employment there, will prevail on the question of domicil, over any floating purpose such person may entertain to return at some indefinite future time to a former place of residence to reside.

4. *Same—Married woman—Temporary residence away from home:* Temporary residence of a married woman away from home cannot, in ordinary circumstances, be set up against the presumption of law that the domicil of the husband is the domicil of the wife.

5. *Resident alien returning to United States after temporary absence:* An alien who has acquired a domicil in the United States cannot be treated as an immigrant on his return to the United States after a temporary absence not involving a change of domicil.

6. *Construction of statutes as affected by revision or amendment:* Authoritative construction of a statue holds good as to a revision or amendment thereof when the features which have been so construed remain substantially unchanged and do not suggest, in the revision or amendment, any intention of the legislature to change them.

*Habeas Corpus:* Petition for writ, and order to show cause.

*G. S. Curry* for petitioner.

*R. W. Breckons*, U. S. District Attorney, and *C. C. Bitting*, Assistant U. S. Attorney, for respondent.

DOLE, J. Upon the filing of the petition an order was made for the respondent, Richard L. Halsey, alleged immigration inspector at the port of Honolulu, to show cause why the prayer of the petition should not be granted. The respondent admitted in his return that he was such immigration inspector and that the petitioner arrived in Honolulu, as alleged in her petition, June 10, 1912, in the steamship Mongolia from Japan, and further stated that the petitioner was found to be afflicted with the disease known as

trachoma, and the matter was then referred to the board of special inquiry, which board took testimony upon the question "whether or not the said Tsuru Tomimatsu had returned to Japan with the intention of returning to Hawaii," and thereupon reached the conclusion that she "was an alien immigrant afflicted with a dangerous contagious disease, and that some four or five years prior to the date of the said hearing she . . . had gone from the Territory of Hawaii to Japan with the intention of remaining in Japan and not with the intention of returning to the Territory of Hawaii; and did thereupon duly and regularly order that the said Tsuru Tomimatsu be deported." The respondent further stated that the petitioner took an appeal to the Secretary of Commerce and Labor, and, through her attorney, submitted a brief in the proceedings on appeal on the question "whether or not she was an alien immigrant within the meaning of the immigration laws of the United States;" and that the Secretary of Commerce and Labor sustained the finding of the board of special inquiry.

The exhibits attached to the return include a copy of the oral testimony of the petitioner and of her alleged husband, taken before the board of special inquiry. No other testimony appears to have been received except the certificate of the medical examiner that the petitioner was afflicted with trachoma, which in his opinion could not have been detected at the port of embarkation by a competent medical examination and could not be cured in sixty days. The testimony of the petitioner and Kotaro Tomimatsu, her alleged husband, tells a story of an industrious and thrifty family coming to this country about ten years ago in order to improve their financial opportunities, leaving two children in Japan. Two more children were born here, or, according to the recollection of Kotaro, one was born here and another after the wife reached Japan upon her return there five years ago, at which time she made the trip because, as she says, "I wanted to see my children who were in Japan.

My husband's parents also wanted to see me and wanted to help me in the instruction of my children." On the question whether or not the petitioner was an alien immigrant, the testimony is as follows: Tsuru Tomimatsu: Q. "When you first came to Hawaii did you expect to go back to Japan?" A. "Yes. I expected to go back to Japan again." Q. "If you are landed now is it your intention to remain in Hawaii always, or do you expect to return to Japan again?" A. "I expect to stay here and work for ten years and then return to Japan again." Q. "Do all of your children expect to come to Hawaii sometime?" A. "Yes, they all expect to come." Q. "You have said that when you went to Japan four years ago you intended to return again to Hawaii. How long did you intend to stay in Japan?" A. "One or two years." Q. "You have now staid four years. Why did you not return sooner?" A. "I waited for Giichi to get through the grammar school." Kotaro Tomimatsu: Q. "Do you expect to remain permanently in Hawaii, or do you expect to go back to Japan sometime to live?" A. "I intend to go back to Japan, my native land, again." Q. "When you go back, do you expect to take your wife with you?" A. "Yes." Q. "Has that been your intention ever since you came to Hawaii?" A. "Yes. After we saved money enough it has been my hope to go back to Japan." Q. "When your wife went back to Japan was it your intention for her to come back again to Hawaii?" A. "Yes. She intended to come back to this country after a short visit in Japan." Q. "How long did she intend to stay in Japan?" A. "Two or three years. I intended to bring the children here after they had grown." Q. "You say your wife intended to stay in Japan two or three years. It has now been four or five years. Why did she not return sooner?" A. "The children were too small." There is considerable other testimony. I have given that portion which bears most directly upon the point at issue. In the rest, not given, there is nothing that is inconsistent with the above. Upon the testimony

and the medical certificate the board of special inquiry rendered the following decision:

"Edwin Farmer: The applicant in this case, according to the testimony, formerly lived in Hawaii, but went back to Japan about four or five years ago with the intention of again returning to Hawaii after an absence of two or three years in Japan. Her husband has been in Hawaii ever since he came to these islands, ten or eleven years ago, with his wife. If applicant's intention of sometime returning to Hawaii no matter how many years she may have remained in Japan, her husband still being in Hawaii, makes her a resident of Hawaii, it would seem that the intention of both husband and wife to ultimately return to Japan to live would, according to the same reckoning, make them both residents of Japan. I therefore move the applicant be denied admission and returned to Japan, the country whence she came, this decision being based on the certificate of the examining surgeon that she is afflicted with a dangerous disease, and that she be allowed to appeal to the Department on the question as to whether or not she is a returning resident and therefore exempt from the immigration laws. By Inspector Moore: I second the motion. Harry E. Brown: It is so ordered."

[1] It is recognized by all the authorities that a court having jurisdiction in proceedings for writs of habeas corpus may not interfere with the decisions of a board of special inquiry or of the Secretary of Commerce and Labor on appeal from such board, in cases touching the right of aliens to land in the United States whenever such board is dealing with issues of fact within its jurisdiction, and the alien has had an opportunity to be present at the hearing and to introduce testimony. *Chin Yow v. United States*, 208 U. S. 8, 13; *United States v. Sprung*, 187 Fed. 903, 906; *United States v. Ju Toy*, 198 U. S. 253, 262. Where, however, the right of a person to enter the United States is claimed on the ground of citizenship or domicil and is denied by the immigration officers, it may be reviewed by such court on application for a writ of habeas corpus, when it depends upon a question of law. *United States v. Williams*, 173 Fed. 627; *Davies v.*

*Manolis,* 179 Fed. 818, 822; *School of Magnetic Healing v. McAnnulty,* 187 U. S. 94, 107-108.

The petitioner does not contest the statement of the medical certificate that she was afflicted with trachoma. Her claim of a right to land is based upon the testimony given above of the established domicil of herself and her husband in Hawaii some ten years before of her return to Japan four or five years before in relation to the welfare of her children with the intention of returning to Hawaii. The answer recites that the board of special inquiry took testimony "as to whether or not the said Tsuru Tomimatsu had gone to Japan with the intention of returning to Hawaii," and thereupon and with the statement of the medical certificate, determined that she was an alien immigrant afflicted with a dangerous contagious disease, that four or five years prior thereto, she had gone to Japan with the intention of remaining there, and ordered her deportation to Japan. The decision of the board of special inquiry, exhibited, admits that the petitioner went to Japan with the intention of returning to Hawaii in two or three years, and decides for her deportation upon the following curious reasoning: "If applicant's intention of sometime returning to Hawaii, no matter how many years she may have remained in Japan, her husband still being in Hawaii, makes her a resident of Hawaii, it would seem that the intention of both husband and wife to ultimately return to Japan to live would, according to the same reasoning, make them both residents of Japan."

[2] With this disposal of the case by the board of special inquiry upon a question of law, the authority of this court to review its decision, under habeas corpus proceedings, accrues.

"It remains, therefore, the sole duty of the court to determine whether or not the proceedings for the deportation of the relator have been according to law. If they have, he must be remanded. If they have not, he must be released." *United States v. Sibray,* 178 Fed. 144, 147.

[3]   The testimony, which is not only uncontradicted but unquestioned by the petitioner, shows that husband and wife had acquired a domicil in Hawaii.  Acts. indicative of an intention of one to take up his abode in a certain locality for a period of years, together with his actual residence in such locality, "must prevail over any secret purpose which he may have entertained to return at some indefinite future time" to a former place of residence and make that his home.  *Wright v. Schneider,* 32 Fed. 705, 706; *Holmes v. Green,* 73 Mass. 299, 301.

[4]   Under such circumstances, the temporary return of the wife to Japan, obviously for family reasons, could not destroy her domicil in Hawaii.  That such visit was of a temporary nature is shown both by the testimony and her return to Hawaii.

"Actual residence—residence in point of fact, signifies nothing in the case of a married woman, and shall not, in ordinary circumstances, be set up against the presumption of law that she resides with her husband."  *Warrender v. Warrender,* 9 Bligh N. S. 89, 104;  5 Eng. Reprint, 1227, 1233; *Re Daly's Settlement,* 25 Beav. 455; 460; 53 Eng. Reprint, 711, 713; *Dolphin v. Robins,* 7 H. L. C. 390;  11 Eng. Reprint, 156.

[5]   If this reasoning is correct the petitioner comes under the rule established in many Federal decisions to the effect that "an alien who has acquired a domicil in the United States, cannot thereafter, and while still retaining such domicil, legally be treated as an immigrant on his return to this country after a temporary absence for a specific purpose, not involving change of domicil." *Rodgers v. United States, ex rel. Buchsbaum,* 152 Fed. 346, syl. (1907), and *United States v. Aultman Company,* 143 Fed. 922 (1907).

[6]   Although the act "to regulate the immigration of aliens into the United States," approved March 3, 1903, 32 Stat. 1213, was repealed, except as to section 34, relative to another subject, by the act of February 20, 1907, 34 Stat. 898, bearing the same title, the decisions under former sta-

tutes upon this point apply as well to the later statute, whose object as expressed by the title is to regulate the immigration of aliens into the United States. This object is borne out by the consistent expression of the statute throughout, and by the constant appearance and repetition of words and sentences that are inconsistent with any other purpose. For instance, the taxes collected from aliens entering the united States are constituted a permanent appropriation called the "immigrant fund," to be used for the "expenses of regulating the immigration of aliens into the "United States." Sec. 1. The "immigrant fund" is also referred to in sections 19, 20, 24 and 39. Section 3 relates to the importation of any alien woman or girl for the purpose of prostitution. Sections 4, 5 and 6 deal with the "importation or migration" of contract laborers. Section 7 forbids transportation companies from soliciting or encouraging the "immigration of any aliens." Section 8 provides punishment for anyone who may land any alien not admitted by an "immigrant inspector" in the United States. Sections 12, 14, 19, 22, 24, 25, 32, 36 and 40 refer to the "Commissioner General of Immigration," who by virtue of section 22, has charge of all laws relating to the "immigration of aliens." Sections 12, 14, 15, 16, 17, 18, 22, 24 and 25 refer to "immigration officers." Section 24 refers to "immigrant inspectors and other immigration officers." Section 25 provides for boards of special inquiry "for the prompt determination of all cases of immigrants detained . . . under the provision of law." Sections 30, 31 and 40 refer to "immigrant stations," and authorize the President to negotiate treaties for regulating the "immigration of aliens to the United States." Section 40 provides for a "division of information in the Bureau of Immigration and Naturalization . . . to promote beneficial distribution of aliens admitted into the United States among the several States and Territories desiring immigration." Section 42 treats of the accommodation to be given "immigrant passengers" on vessels bringing

them to the United States. The word "alien" is used substantially as it is used in the previous statutes; only once is the phrase "alien immigrant" used in the act of 1891, and not at all in the act of 1903.

There appears little room for argument that the numerous authorities that support the construction that the restrictive measures of the acts of 1891 and 1903 do not apply to alien residents of the United States, do not support the same construction of the act of 1907.

[2b]   An additional ground of jurisdiction of this court in this case is suggested by the case of *Ex parte Watchorn,* 160 Fed. 1014, 1016, in which the court says, "Doubtless the determination of the immigration authorities upon all questions of fact, even if made upon legally incompetent or inconclusive evidence, is final, but when the proceedings before them show indisputably that they are acting without jurisdiction, relief may be had by writ of habeas corpus;" and refers to *Gonzales v. Williams,* 192 U. S. 1.

The writ prayed for may issue.

---

*Appeal dismissed,* Circuit Court of Appeals, under Sec. 3 of Rule 22. See *Lapina v. Williams,* 232 U. S. 78 (1913), holding contra to paragraph 5 of the syllabi, supra.