Ex parte GARCIA.

(District Court, N. D. California, First Division. March 3, 1913.)

No. 15,338.

1. ALIENS (§ 54*)—DEPORTATION FOR IMMORAL PRACTICES—LIMITATION OF PROCEEDINGS.

Under Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264 (U. S. Comp. St. Supp. 1911, p. 502), which provides that "any alien who shall be found an inmate of or connected with the management of a house of prostitution, * * * or who shall receive, share in or derive benefit from any part of the earnings of any prostitute," shall be deemed to be unlawfully within the United States, and shall be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deported, there is no limitation of the time within which such an alien may be deported to three years from the time of entry, as was the case under the section before amendment.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. §. 54.*]

2. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION—EVIDENCE BY AFFIDAVIT—FAIRNESS OF HEARING.

The trial of the right of an alien, charged with violation of the immigration laws, to remain in this country, on ex parte affidavits, does not amount to a denial of a fair hearing, or of due process of law; and, conceding such practice to be lawful, the fact that affidavits were taken by the government without notice to the accused or his counsel, and in the absence of such counsel, or the refusal of the affiants to appear and submit to cross-examination, where not induced by the government officers, while such matters may be considered as affecting the weight of the testimony, are irregularities in procedure only, which do not invalidate the proceedings.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. §. 54.*]

3. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION—LEGALITY.

Proceedings for the deportation of an alien, charged with violation of the immigration laws, are not invalid because his counsel is not given an opportunity to see the recommendations forwarded by the officer in charge with the record to the Secretary of Commerce and Labor.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. §. 54.*]

Petition of Pedro Garcia for a writ of habeas corpus. On demurrer to petition. Demurrer sustained.

Marshall B. Woodworth and Gerald C. Halsey, both of San Francisco, Cal., for petitioner.

John L. McNab, U. S. Atty., of San Francisco, Cal., for Department of Commerce and Labor.

DIETRICH, District Judge. On October 28, 1913, after an extended investigation, the Secretary of Commerce and Labor issued a warrant for the deportation of one Pedro Garcia, an alien, who first came to this country from Spain in 1899. The warrant is based upon a finding of fact to the effect that in violation of section 3 of an act of Congress approved February 20, 1907 (34 Stat. 899, c. 1134 [U. S. Comp. St. Supp. 1909, p. 450]), as amended by an act approved March 26, 1910 (36 Stat. 264, c. 128, § 2 [U. S. Comp. St. Supp. 1911, p. 502]), the alien, while domiciled in the state of California, and for some time immediately prior to his arrest in July, 1912, was, at the town of Vallejo, "found receiving, sharing in, and deriving benefit from the earnings of prostitutes, and * * * was connected with the management of a house of prostitution." Feeling aggrieved by the issuance of the warrant, Garcia has presented a petition for a writ of habeas corpus, accompanied by a copy of all the proceedings before the immigration officials, to which petition, in response to an order to show cause, the immigration officers have filed a demurrer. The present submission is upon the demurrer, which calls into question

the sufficiency of the petition to warrant interference by the courts with the proposed deportation.

[1] 1. The first contention of the petitioner is that, assuming the facts found by the Secretary of Commerce and Labor to be true, the warrant is against the law, for the reason that admittedly he was domiciled in this country for a period greatly exceeding three years immediately prior to his arrest, and the statutory authority under which the Department is assuming to act is limited to aliens of less than three years' residence. But it is not thought that this question is any longer an open one here, for upon consideration it has been expressly held in this court that by the amendatory act of 1910 the limitation clause relied upon was repealed. Ex parte Cardonnel (D. C.) 197 Fed. 774. In support of his position the petitioner cites Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165; but while in the course of the opinion in that case language was used favorable to his contention, it is clear that the point was not involved and the court did not intend to decide it. In line with the Cardonnel Case the following may be cited: United States v. Weis (D. C.) 181 Fed. 860; United States v. Prentis (D. C.) 182 Fed. 894; United States v. Williams (D. C.) 183 Fed. 904; United States v. North-German Lloyd S. S. Co. (C. C.) 185 Fed. 158; Sire v. Berkshire (D. C.) 185 Fed. 967; Chomel v. United States (C. C. A., 7th Circuit) 192 Fed. 117, 112 C. C. A. 461.

[2] 2. In the second place, it is argued that the petitioner was not given a fair hearing. While under this branch of the case the proceedings are attacked in several distinct particulars, it is found upon analysis that directly or indirectly they all relate to and depend upon the general question whether in matters of deportation issues of fact may be properly tried out upon ex parte affidavits. All of the evidence adduced in the case, both against and for the petitioner, was in the form of affidavits or ex parte depositions, and if such procedure is not in violation of the standing rules of the Department, or in contravention of any fundamental principle of procedure or natural right, then all of the specific criticisms urged by the petitioner cannot avail to confer authority upon the court to interfere with the execution of the warrant, and for these reasons: The petitioner was advised of his right to have the assistance of counsel, and in due time counsel was employed. A liberal time was given for the production of his evidence, and nothing offered by him was excluded. While the bias of an advocate is shown by one of the inspectors in taking certain of the affidavits or ex parte depositions, upon the whole the record shows no disposition to be unfair or to prejudge the case upon the part of the adjudicating officers. If it be conceded that the witness Bonita Diaz both understood and spoke the English language imperfectly, it does not follow that the statement elicited from her before she procured counsel, and without the aid of an interpreter, must be rejected entirely, or that its consideration constitutes jurisdictional error. The same difficulty is not infrequently experienced in criminal and other judicial proceedings, and it is sometimes a nice question whether or not a court should compel a witness to testify

without an interpreter. It is well known that unwilling witnesses sometimes feign ignorance of our language as a pretext to shield them from direct interrogation. Undoubtedly Bonita Diaz was an unwilling witness, and I am not convinced that the officials acted fraudulently or abused their discretion in taking her statement under the circumstances disclosed by the record. At most, in the absence of facts tending to show bad faith upon their part, it was but an error in procedure, and does not operate to confer jurisdiction in a habeas corpus proceeding any more effectually than would the reception of irrelevant or incompetent testimony.

As to the point that in deciding the merits of the case the Department considered as a part of the evidence the preliminary affidavits upon the basis of which the original arrest was made, and which were therefore taken before the petitioner was apprised of the charge against him, it is clear that if the hearing can properly be had upon affidavits the objection is without merit.

A more serious criticism is that affidavits or ex parte depositions were taken without notice after the petitioner had employed counsel; but even here it is again to be said that if it be conceded that the entire hearing may be had upon affidavits the incident is without prejudicial error, for in the taking of affidavits by the government the presence of petitioner and his counsel could subserve no useful purpose. Affidavits are of necessity ex parte; there is no place for cross-examination.

In the same connection it is charged that later, when requested to submit to cross-examination by counsel for the petitioner, these affiants declined to grant the request. Such conduct upon their part was reprehensible, and is hardly consistent with the theory of their disinterestedness or truthfulness, and under the circumstances should greatly, if not entirely, discredit their statements. But there is no showing that their attitude was the result of any inducement or suggestion coming from any officer of the government; nor was any application made to the government officers to produce the witnesses or to join with petitioner in requesting an opportunity to cross-examine. While I do not find any standing rule to that effect, upon the whole record I get the impression that the use of affidavits in such proceedings is a common practice, which in this case was followed as a matter of course, without any thought on the part of the officers that it was unfair or would be unjust to the petitioner. Indeed, counsel for the petitioner, who seem to have had considerable experience in such cases, when advised that the last group of affidavits had been taken, apparently felt and expressed no surprise that they should have been taken without notice, and at the time made no objection to their use, their only request being for additional time to refute them, which request was granted; and it may be added that in making his showing the petitioner relied exclusively upon affidavits taken without notice to the government. Bearing, as they do, upon the good faith and the fair intent in fact of the officers, these considerations are to be weighed in determining the legal effect to be attached to any error of law which the record may disclose. I am frank to say that in a

case of this kind, where the petitioner has been domiciled in this country for more than a decade, and may have acquired large property interests and formed close social ties, and where, therefore, deportation is fraught with such dire consequences to him, to subject his right to remain here to a trial by ex parte affidavits is so far out of harmony with the procedure which I think ought to prevail that I would be inclined, upon slight evidence of bad faith on the part of the administrative officers, to grant him relief; but I find no such substantial evidence. And, as already suggested, if the hearing was in any respect unfair, it was because of the inherent unfairness of the affidavit method of procedure.

Among other things, rule 22, promulgated by the Department under authority of law, provides that:

"If counsel be selected, he shall be permitted to be present during the further conduct of the hearing, to inspect and make a copy of the minutes of the hearing, so far as it has proceeded, and to offer evidence to meet any evidence theretofore or thereafter presented by the government."

It has been decided that to deny the alien the benefit thus conferred, or by holding out false hopes to dissuade him from availing himself of it, is to deprive him of a fair trial. United States v. Williams (D. C.) 185 Fed. 598; Roux v. Commissioner of Immigration, 203 Fed. 413 (No. 2,164, C. C. A., 9th Circuit, decision filed February 24, 1913).

Was the failure of the inspector to give notice to petitioner's counsel of his intention to take the last group of affidavits a breach of this provision? Counsel has the right "to be present during the further conduct of the hearing," and the petitioner contends that this privilege includes the right to be present at the taking of affidavits; but, as already pointed out, the mere presence of counsel while the government is taking affidavits would avail nothing. The only substantial right would be that of cross-examination. The term "hearing" may or may not have been intended to cover the taking of affidavits, and in the light of the practical construction that has been placed upon the rule it should be held, I think, that it was not intended to go to that extent. It is significant that, while certain privileges of counsel are enumerated, cross-examination is not one of them. Evidence may be offered to rebut evidence produced by the government, but there is no suggestion of the right to cross-examine. Apparently it was contemplated that evidence would be produced by both sides in the form of affidavits, and therefore no provision was made for cross-examination.

Now, to the exact question, whether a trial by affidavits should be considered a "fair hearing": If the answer be in the affirmative, the writ must be denied; for, as we have already seen, there is no evidence of bad faith, and admittedly, if ex parte affidavits may be considered, there was before the Secretary ample evidence to justify the issuance of the warrant. So far as I have been able to discover, the specific point is not ruled by any decision of controlling authority; but certain general principles applicable to such hearings have in varying language been repeatedly enunciated. It is well settled that

trials of this character are not governed by the rules of criminal procedure. Fong Yue Ting v. United States, 149 U. S. 698, 730, 13 Sup. Ct. 1016, 37 L. Ed. 905; United States v. Hung Chang, 134 Fed. 19, 25, 67 C. C. A. 93.

In Lee Lung v. Patterson, 186 U. S. 168, 176, 22 Sup. Ct. 795, 797 (46 L. Ed. 1108), the Supreme Court said:

"But jurisdiction is given to the collector over the right of the alien to land, and necessarily jurisdiction is given to pass on the evidence presented to establish that right. He may determine the validity of the evidence, or receive testimony to controvert it, and we cannot assent to the proposition that an officer or tribunal, invested with jurisdiction of a matter, loses that jurisdiction by not giving sufficient weight to evidence, or by rejecting proper evidence, or by admitting that which is improper."

Again, in the Japanese Immigrant Case, 189 U. S. 86, 100–102, 23 Sup. Ct. 611, 614 (47 L. Ed. 721), the same court takes pains, not only to state the general rule, but also to define its limitations. It was said that it had never been held that, in executing the provisions of deportation statutes, administrative officers were at liberty to "disregard the fundamental principles that inhere in 'due process of law,' as understood at the time of the adoption of the Constitution." "One of these principles," the court goes on to say, "is that no person shall be deprived of his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends—not necessarily an opportunity upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act." In affirming the judgment of the lower court dismissing the writ, comment was made upon some of the grounds upon which the petitioner relied, as follows:

"The traverse to the return made by the immigration inspector shows upon its face that she [the petitioner] was before that officer pending the investigation of her right to be in the United States, and made answers to questions propounded to her. It is true that she pleads a want of knowledge of our language, that she did not understand the nature and import of the questions propounded to her, that the investigation made was a 'pretended' one, and that she did not at the time know that the investigation had reference to her being deported from the country. These considerations cannot justify the intervention of the courts. They could have been presented to the officer having primary control of such a case, as well as upon an appeal to the Secretary of the Treasury, who had power to order another investigation, if that course was demanded by law or by the ends of justice. It is not to be assumed that either would have refused a second or fuller investigation, if a proper application and showing for one had been made by or for the appellant. Whether further investigation should have been ordered was for the officers, charged with the execution of the statutes, to determine. Their action in that regard is not subject to judicial review. * * * If the appellant's want of knowledge of the English language put her at some disadvantage in the investigation conducted by that officer, that was her misfortune, and constitutes no reason, under the acts of Congress, or under any rule of law, for the intervention of the court by habeas corpus."

In Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, it was held that the alien must be accorded a hearing by the Department, at which he has a "fair opportunity to produce evi-

dence," and such hearing must be "fair" and "in good faith"; a mere "semblance" of a hearing is insufficient, but the hearing may be "summary in form"; the denial of a fair hearing "cannot be established by proving [merely] that the decision [of the Department] was wrong."

In Frick v. Lewis, 195 Fed. 693, 115 C. C. A. 493 (C. C. A., 6th Circuit), it was said:

"But where a fair, though summary, hearing has been given, in ascertaining whether there is or is not any proof tending to sustain a charge involved in a case like this, it is not open to courts to consider either admissibility or weight of proof according to the ordinary rules of evidence."

In Siniscalchi v. Thomas (C. C. A., 6th Circuit) 195 Fed. 701, 115 C. C. A. 501, the Circuit Court of Appeals of the Sixth Circuit quotes with apparent approval the language employed by Judge Dodge in the Jen Yuen Case (D. C.) 188 Fed. 350, as follows:

"It is well settled that officers of the government, to whom the determination of questions of this kind is intrusted under statutes like these governing these proceedings, are not bound by the * * * evidence applied in courts. It is not enough for a review of their decision on habeas corpus that there was no sworn testimony, or no record of the testimony or of the decision. No formal complaint or pleadings are required. The alien's opportunity to be heard need not be upon any regular set occasion, nor according to the forms of judicial procedure. It may be such as will secure the prompt, vigorous action contemplated by Congress and appropriate to the nature of the case."

If I rightly understand the purport of these decisions, upon principle they rule the point under consideration adversely to the petitioner's contention, and sustain the view that the trial of the right of an alien to remain in this country by affidavits does not amount to the denial of a "fair hearing" or "due process of law." While in the cases chiefly relied upon by the petitioner (United States v. Williams [D. C.] 185 Fed. 598 ; United States v. Redfern, 180 Fed. 500; United States v. Sibray [C. C.] 178 Fed. 144; Sibray v. United States, 185 Fed. 401, 107 C. C. A. 483; Redfern v. Halpert, 186 Fed. 150, 108 C. C. A. 262), the courts use language disapproving of certain specified methods employed by the immigration officers, in no one is a substantive rule announced out of harmony with the conclusion which we have reached, excepting only in the opinion of a lower court in the Sibray Case, 178 Fed. 144, 148, where the view was expressed that the alien is entitled to be confronted with the witnesses against him, and has the right to cross-examine them. Unfortunately the point was not decided upon appeal.

[3] 3. The further contention, made by the petitioner, that his counsel was not given an opportunity to see the recommendations forwarded by the officer in charge to the Secretary of Commerce and Labor, is, I think, without merit. These recommendations do not constitute a decision, from which an appeal must or can be taken. The only adjudicating officer is the Secretary himself, and with the entire record of the facts open to his inspection and examination counsel for the petitioner may fully argue all questions in the brief which he is permitted to file and have forwarded to the Secretary. This argument may be made on the theory that the recommendations

of the officer in charge will be adverse to the petitioner, and presumably it is made with such possibility in mind.

Possibly the discussion has been elaborated beyond reasonable bounds; but in view of the serious consequences to the petitioner of the execution of the warrant of deportation, and the industry and zeal of counsel in preparing and presenting his defense, I have been impressed with the propriety of making a re-examination of the questions involved.

The demurrer will be sustained.