## MITA v. BONHAM, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. March 30, 1928.

No. 5350.

**1. Aliens** ⬤⇒**54(9)—Evidence held to sustain deportation of alien for giving assistance to prostitute.**

Evidence on habeas corpus *held*, sufficient to sustain finding that alien was properly ordered deported on ground that he was giving assistance to a prostitute.

**2. Aliens** ⬤⇒**54(17)—Appellate court, on habeas corpus by alien, is concerned only as to whether evidence supported finding of deportation.**

Appellate court, on habeas corpus proceedings by an alien ordered to be deported, does not decide issues of fact, but is concerned only with question whether there was substantial evidence to support requisite finding.

**3. Affidavits** ⬤⇒**18—Ex parte testimony and affidavits can be received and considered as evidence in administrative hearing.**

In administrative hearing, ex parte testimony and affidavits can be received and considered as evidence, particularly if no objection is made to their reception, and providing administrative officials are willing to entertain cross-examination and rebutting proofs.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Habeas corpus by Itsusaburo Mita against R. P. Bonham, Commissioner of Immigration at the Port of Portland, Oregon. Judgment of dismissal, and petitioner appeals. Affirmed.

Elton Watkins and W. H. Fowler, both of Portland, Or., for appellant.

George Neuner, U. S. Atty., and Forrest E. Littlefield, Asst. U. S. Atty., both of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The plaintiff, an alien, was ordered to be deported upon the ground that he was giving assistance to a prostitute, and also that he was maintaining a house of prostitution; the house in question being a hotel operated by him at Portland. The court below dismissed his petition for a writ of habeas corpus. [1] Fully appreciating the consequences of deportation to the alien and his family, we have examined the record with care, but find no substantial ground for disturbing the order. To warrant deportation it was only necessary for the government to show that appellant was knowingly giving assistance to a prostitute in the pursuit of her unlawful vocation. Two witnesses, one a city police officer, gave testimony which, if credited, would leave no doubt of the truth of the charge. In a campaign against violators of the law, these two men were assigned to the task of discovering evidence. Admittedly the Hart woman occupied a room in the appellant's hotel. The police officer, who had upon a previous occasion rented a room at the hotel, testified that on the evening of

April 22d he inquired of Mita whether he could have a room and a girl. Mita replied that he could have a room, and that there was a girl in No. 215, but he did not know whether she would stay with him all night. Mita took him to his room, turned on the light, indicated where room No. 215 was, and returned to the office. Shortly thereafter, the witness knocked at the door of 215, and, after inquiry as to who sent him and whether he had a room, the Hart woman admitted him. She explained that she could not stay with him all night, but for a price named offered intercourse. Also upon May 3d the officer made inquiry of Mita whether the girl was still in 215, and upon receiving an affirmative answer and going to the room he had a similar experience with the woman, she again offering intercourse. The other witness, Charles Mike, testified that on a Saturday night he asked Mita what he charged for rooms, and upon receiving a reply he said he might take a room if Mita had any girls. Mita responded that he would get him one, and that there was one in 215, but she was busy. Upon repeated inquiries later that night and the next day, the witness was informed that the girl was either busy or out. Mita informed him of the age of the girl, that she was good looking, and what her price would be, and upon the witness' return Monday night, recognizing him, Mita guided him to 215, opened the door, and told him to go in. The Hart woman was lying on the bed partially clad. Arising, she came to the witness and, taking a lewd posture upon his lap, inquired if he did not want to spend a little money.

[2] Such being a fair statement of the testimony for the government, the most that can be said of all other evidence exhibited by the record is that it bears upon the credibility of the two witnesses and makes a case of conflicting testimony. But we do not decide issues of fact, and are concerned only with the question whether there is substantial evidence to support the requisite finding.

We have but recently held that a single proposal of intercourse may be made by a woman in such a manner and under such circumstances as to constitute the clearest evidence of her immoral vocation. Leffer v. Nagle (C. C. A.) 22 F.(2d) 800. See, also, United States v. Curran (C. C. A.) 8 F.(2d) 355. And if this woman conducted herself

on these three occasions as the witnesses relate, there can be no doubt that she was a common prostitute, active in her calling. Furthermore, if, as the testimony tends to show, appellant rented her a room and upon request for a "girl" directed or guided men to her room, adding information as to her appearance and charges, and advising them at times that she was "busy" or "engaged," he knowingly assisted her within the denunciation of the statute. The fact that he did not share directly in the earnings is, after all, only a probative circumstance, possibly neutralized by the consideration that he may have thought the presence of a "girl" in his house would measurably popularize his rooms. And if the evidence establishes the charge of knowingly giving assistance to a prostitute it is quite unnecessary to inquire whether it was also sufficient to warrant a finding that the hotel was a "house of prostitution," within the intent of the act.

[3] As to the affidavit of the Hart woman, it is the settled rule in this circuit, and at least in some of the others, that in an administrative hearing ex parte testimony and affidavits can be received and considered as evidence, particularly if no objection is made to their reception, and providing, of course, the administrative officials are willing to entertain cross-examination and rebutting proofs. Choy Gum v. Backus (C. C. A.) 223 F, 487, 493; Chin Ah Yoke v. White (C. C. A.) 244 F. 940; In re Parianos (No. 5123 C. C. A.) 23 F.(2d) 918 (decided January 23, 1928); Imazo Itow v. Nagle (No. 5267, C. C. A.) 24 F.(2d) 526 (decided February 27, 1928); Ex parte Garcia (D. C.) 205 F. 56, 57.; Ex parte Hidekuni Iwata (D. C.) 219 F. 610; United States v. Brough (C. C. A.) 15 F.(2d) 377, and cases therein cited.

But, entirely aside from the rule, we are unable to see how the question is even remotely involved here. The department was not in need of the affidavit, and made its case without even offering it in evidence. Thereafter, while the appellant was testifying upon his own behalf, his attorney demanded or requested that the affidavit be put in, and the presiding officer supplied it, with the express statement that it was in response to counsel's request, whereupon appellant's attorney proceeded to interrogate him relative to some of the matters therein contained.

Judgment affirmed.