UNITED STATES ex rel. BOSNY et al. v. WILLIAMS, Commissioner
of Immigration.

(District Court, S. D. New York. February 2, 1911.)

ALIENS (§ 54*)—DEPORTATION—VALIDITY OF PROCEEDINGS.

Evidence *held* to show that aliens detained pending proceedings for
their deportation by the influence of the inspector who was hearing their
case were persuaded and intimidated from exercising their right to be
represented by counsel, under the rules prescribed by the Secretary of
Commerce and Labor, providing that in such cases the alien arrested
shall be given a hearing before the Commissioner of Immigration or an
immigration inspector, and that in such stage of the hearing as the com-
missioner or inspector shall deem proper the alien shall be apprised that
he may thereafter be represented by counsel, who, if selected, shall be
permitted to be present during the further conduct of the hearing, so
that the proceedings were fatally irregular and the order of the Secre-
tary of Commerce and Labor deporting such aliens based upon the pro-
ceedings was invalid, and the detention of the aliens thereunder illegal.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

Habeas corpus by the United States, on the relation of Arthur Bosny
and another, against William Williams, Commissioner of Immigration.
Petitioners discharged.

Charles W. Bacon, for relators.

Henry A. Wise, U. S. Atty., and Daniel D. Walton, Jr., Asst. U. S.
Atty.

HOLT, District Judge. This is a writ of habeas corpus to test the
legality of the detention of Arthur Bosny and Lambertine Bosny, his
wife, who are held under an order for their deportation issued by the
Secretary of Commerce and Labor on the ground that they were pro-
prietors of a house of prostitution. The act of March 26, 1910, amend-
ing the immigration act of February 20, 1907 (Act Feb. 20, 1907, c.
1134, 34 Stat. 898 [U. S. Comp. St. 1901, p. 447] amended by Act
March 26, 1910, c. 128, 36 Stat. 263), makes all aliens guilty of car-
rying on such a business liable to deportation. These aliens have re-
sided several years in this country. The immigration act provides, in
substance, that the person arrested shall have a hearing before the
commissioner or an inspector, but it does not provide for the details
of the practice. The rules prescribed by the Secretary of Commerce
and Labor in relation to immigration provide for the method of pro-
cedure in such cases. These rules prescribe that upon an application
to the Secretary of Commerce and Labor for a warrant of arrest a
statement of the facts, supported, if practicable, by affidavits, is to be
submitted, and thereupon, if it appears to the Secretary that a case is
made out, a warrant of arrest shall be issued. Thereupon the person
arrested shall be given a hearing before the Commissioner of Immi-
gration, or any immigration inspector, and, "at such stage thereof as
the person before whom the hearing is held shall deem proper, the al-
ien shall be apprised that he may thereafter be represented by counsel.
* * * If counsel be selected, he shall be permitted to be present
during the further conduct of the hearing * * * and to offer evi-

dence." In actual practice the usual procedure is as follows: There are a number of officers called inspectors of immigration, connected with the office of the commissioner. Complaint that an alien is in this country in violation of law is usually made by one of these inspectors. The information upon which he bases the charge may have been obtained by himself upon investigation, or may have been furnished to him by others. Frequently such information is furnished by the city police, or by enemies of the person charged, acting through malice or revenge. Affidavits are obtained and are sent by the inspector to the Secretary at Washington, who, if he thinks a proper case is made out, issues a warrant for the arrest of the persons charged. This warrant is usually intrusted for execution to the inspector who has made the charge, and he subsequently usually takes entire charge of the case. After the aliens have been taken to Ellis Island, they are held in seclusion and not permitted to consult counsel until they are first examined by the inspector, under oath, and their answers taken by a stenographer. After this preliminary inquisition has proceeded as far as the inspector wishes, the aliens are then informed that they are entitled to have counsel, and to give any evidence they wish in respect to the charge. Thereafter a further hearing is had before the inspector, at which further evidence may be given by him, and the aliens may appear by counsel and offer evidence in their own behalf. The inspector thereupon reports whether in his opinion guilt has been established, and the evidence taken and the inspector's finding are sent to the Secretary of Commerce and Labor at Washington, who thereupon makes an order either for the deportation or the release of the aliens. It is, of course, obvious that such a method of procedure disregards almost every fundamental principle established in England and this country for the protection of persons charged with an offense. The person arrested does not necessarily know who instigated the prosecution. He is held in seclusion, and is not permitted to consult counsel until he has been privately examined under oath. The whole proceeding is usually substantially in the control of one of the inspectors, who acts in it as informer, arresting officer, inquisitor, and judge. The Secretary who issues the order of arrest and the order of deportation is an administrative officer who sits hundreds of miles away, and never sees or hears the person proceeded against or the witnesses. Aliens, if arrested, are at least entitled to the rights which such a system accords them; and, if they are deprived of any such right, the proceeding is clearly irregular, and any order of deportation issued in it invalid.

It is claimed in this case that the prescribed procedure has not been followed, and that there have been such irregularities in the procedure as to invalidate the result. The charge is that in this case the inspector influenced the aliens, partly by promises of help and favorable treatment, and partly by intimidation, not to employ counsel in the case.

The substantial facts bearing upon this question appearing in evidence are these: The warrant of arrest when issued was delivered to an inspector named Tedesco. Tedesco testifies that the police department of the city reported the case to the immigration office and furnished the witnesses. The warrant appears to have been based on an

affidavit of Alexander Nicolay, who describes himself as a police officer of the city of New York, engaged in obtaining evidence against and the deportation of alien prostitutes and criminals. On September 23d Tedesco, accompanied by Nicolay and a policeman named Cohen, arrested Mr. and Mrs. Bosny at their apartment. The officers testify that Tedesco read to them the warrant of arrest in English and in French. Mrs. Bosny asked permission to be taken to a friend's, Mrs. Karger, who lived in the neighborhood, in order to leave the key of the apartment and her cat and birds with her. Thereupon Nicolay took Mrs. Bosny to Mrs. Karger's. Mr. Karger and Mrs. Karger testify that at that time Mr. Karger suggested that Mrs. Bosny should have counsel, and that Nicolay said that that would not be necessary, that they would probably be released in a day or two. Nicolay denies that he said so. Then Nicolay and Mrs. Bosny rejoined Tedesco and Mr. Bosny, and later Tedesco took Mr. and Mrs. Bosny down to Ellis Island. They both testify that on the trip down and on various occasions after they arrived at Ellis Island Tedesco advised them not to have a lawyer; that sometimes he said he would do all he could for them, and at other times he said that their case would not be as favorably considered by the Secretary at Washington if they had a lawyer, and, in substance, Mr. and Mrs. Bosny both assert that Tedesco all the time while they were under arrest sought to make them believe that he and the Secretary and the Department generally would take umbrage at their employing a lawyer, but would be inclined to be lenient with them if they did not employ a lawyer. Tedesco denies that he ever told them not to employ a lawyer on the trip down or at any other time. On the day after they were taken to Ellis Island their friend Mrs. Karger requested Jonas T. Hegt, a lawyer who was accustomed to practice in immigration cases, to go to Ellis Island and offer to act for the Bosnys. Hegt testified that he went there on the day after their arrest, and asked for permission to interview the aliens, which was refused because the preliminary hearing had not been had. He then asked permission to send a note to Mrs. Bosny, advising her that he was there. Permission was given, and he sent in a card telling Mr. and Mrs. Bosny that Mr. Karger had sent him to them, and that he understood that they wished the services of an attorney, and a verbal message came back saying that they did not want his services yet. Thereupon Mr. Hegt returned to New York. Early in October Mr. Karger telephoned Mr. Hegt again, and said that Mr. and Mrs. Bosny were to have their hearing the following morning. Thereupon Mr. Hegt went again to Ellis Island, where he saw Mr. Tedesco. Tedesco said that they did not want a lawyer, and that, if he did not believe his statement, to send for them and have them tell him. They were sent for, and he saw them in the office, and they said that they did not want an attorney, and thereupon Mr. Hegt returned to New York. Later Mr. Bacon, their attorney in this proceeding, met Mrs. Bosny when at Ellis Island on other business. She asked him if he could attend to their case. He said that he could not do so without a permit from the commissioner. He returned to New York, and the next morning called up the law division of the office by telephone and applied for permission to see Mrs. Bosny, and was told in reply that she had been taken

to the law division and had stated there that she did not wish to have a lawyer. Thereupon Mr. Bacon did nothing further until October 26th, when he received a letter in French, a copy of which, with the translation, is as follows:

"Department of Commerce and Labor.

"Immigration Service.

"U. S. Immigration Station,
"Ellis Island, N. Y. H., N. Y.
"25 Octobre, 1910.

"Monsieur: Veuillez s'il vous plait avoir la bonté de venir nous voir ici le plutot possible pour notre affaire. En attendant recevez nos salutations respectueuse.            Mr. et Mme. Bosny.

"Warrant case. Ellis Island."

"Kindly call upon us as soon as possible in regard to our matter. Awaiting you we offer you our salutations.            Mr. and Mrs. Bosny."

Mr. Bacon thereupon went to Ellis Island, and at the law division met Inspector Tedesco. Mr. Bacon's testimony as to what took place there is as follows: Tedesco stated that Mrs. Bosny had not written him any letter whatever. Upon Mr. Bacon's showing the letter to Tedesco, he was at first refused permission to see Mrs. Bosny, but afterwards he was allowed to go to the deportation division in company with Tedesco. He was left in the corridor outside the place where the persons confined in the deportation division are held, while Tedesco went back, presumably to get Mrs. Bosny. After waiting some time, Mr. Bacon looked through the door, down the corridor, and there saw Mrs. Bosny and Tedesco talking earnestly and gesticulating vehemently. An employé of the department was then passing through the corridor, and Mr. Bacon told him to tell Tedesco that, if he was not permitted immediately to see Mrs. Bosny, he would complain to the commissioner. Thereupon Tedesco came out with Mrs. Bosny, and after some talk Mrs. Bosny said she would see him later. Mr. Bacon asked her if she wished him to act for her, and she said she thought she would. Mr. Bacon then went back to the law division, and requested permission to see the records in the case and the evidence given in the hearings. This was referred by the acting law clerk to Mr. Williams, the commissioner, and Mr. Bacon went before Mr. Williams, and made that request. Mr. Williams said that he did not know whether he ought to grant it or not, and that he would let him know by letter. Mr. Williams subsequently sent Mr. Bacon the following letter:

"Department of Commerce and Labor.

"Immigration Service.

"Office of Commissioner of Immigration, Ellis Island, New York Harbor, N. Y.

"Bosny Case.

"October 27, 1910.

"Charles W. Bacon, Esq., 154 Nassau St., New York City.

"Sir: I have personally interviewed this morning Lambertine Bosny and she stated to me in the presence of Interpreter Tedesco that she did not wish to employ a lawyer until it was determined that she should be deported. She seemed to think that in that event she would want a lawyer's services. She was very explicit that she did not require one now. Under the circumstances it does not seem to me that there is any reason why you should

wish to see the record. If she is ordered deported and retains you for any subsequent purpose I shall be glad to let you read it.

"Respectfully,                    William Williams, Commissioner."

Thereupon the final hearing was had in the case before Tedesco, at which no counsel appeared and no evidence was given in behalf of the aliens. The record was sent to Washington, and an order was made for their deportation, and then they retained Mr. Bacon to act for them. He obtained this writ of habeas corpus, upon the hearing of which evidence has been taken before me.

The question in this case is whether Tedesco, the inspector, prevented these aliens by undue influence and by intimidation from retaining counsel in the case. There is no doubt that they were formally informed by the commissioner and by Tedesco that they had a right to have counsel, and I have no doubt that they told Commissioner Williams, and that he believed, that they did not want counsel. The charge is that Tedesco was constantly suggesting to them that it would be better for them not to have counsel, sometimes in effect making them believe that he would take umbrage at their having any counsel, and that the Secretary at Washington, when he came to review the record, would be prejudiced against them if he found that they had taken counsel. Upon that question, if the proof were simply the evidence of the aliens on the one side in support of the charge, and of Tedesco and Nicolay on the other in denial of it, it might be said that the evidence was evenly balanced. But there is much more in the proof in this case than the evidence of the aliens. Mr. and Mrs. Karger, friends of Mrs. Bosny, with whom she left the key of the apartment on the day of her arrest, testify that Nicolay told them that they would not need a lawyer. The next day Mr. Karger requested Mr. Hegt, a reputable lawyer, to go down to Ellis Island and defend the aliens. He went there, but was told that his services were not wanted. Later, when the hearing came on, and Karger again requested Mr. Hegt to act, he went to Ellis Island again. Upon calling at the office and applying to see Mrs. Bosny, Tedesco appeared and immediately asserted that the woman did not want any lawyer. Hegt asked to see Mrs. Bosny. Tedesco brought her forward, and she again refused to accept his services. Subsequently Mrs. Bosny told Mr. Bacon that she thought she would like to have him act for her, and asked him to examine the papers. Mr. Bacon refused to do anything until he obtained permission, and, on applying by telephone for permission to see Mrs. Bosny, received a reply that she did not want any lawyer. Subsequently he received the letter from Mrs. Bosny, in French, asking him to "have the goodness to come and see us here as soon as possible in regard to our business." Is it conceivable that, when that letter was written, they did not want the services of Mr. Bacon? Mr. Bacon went to Ellis Island and asked to see Mrs. Bosny. Tedesco came forward. Bacon said that he had received a letter from Mrs. Bosny. Tedesco denied that he had received any such letter, which Mr. Bacon thereupon produced. Even after the letter was produced, he was at first refused permission to see Mrs. Bosny, but finally it was concluded that he could see her, and Tedesco went down the corridor to bring her. Bacon, after

waiting many minutes, looked down through the corridor and saw Tedesco and Mrs. Bosny arguing earnestly together. He sent a messenger to Tedesco to say that, if he was not immediately permitted to see Mrs. Bosny, he would complain to the commissioner. Thereupon Tedesco brought Mrs. Bosny out, and Mrs. Bosny said she would see Mr. Bacon later. He asked her if she wanted him to act for her, and she said she thought she would. Mr. Bacon then went back to the law division again, and asked to look at the record, and Mr. Williams said that he did not know whether he ought to grant it or not, and subsequently wrote the letter to Mr. Bacon quoted above, in which he says:

"I have personally interviewed this morning Lambertine Bosny and she stated to me in the presence of Interpreter Tedesco that she did not wish to employ a lawyer until it was determined that she should be deported."

The commissioner therefore declined to let Mr. Bacon see the record, and Mr. Bacon thereupon took no further action in the case at that time.

The weightiest proof in the case is the fact itself that these aliens did repeatedly refuse to retain counsel. They were aliens in humble circumstances. They knew nothing of American law or of the practice in deportation cases. Their native language was French. Mr. Bosny speaks English fairly well, and Mrs. Bosny very poorly. They had been arrested and taken from their home to Ellis Island. They were charged with being engaged in a disgraceful business. They were to be tried on that charge, and, if convicted, they would be deported. If deported, they would be liable to two years imprisonment if they ever attempted to re-enter the country. Is it conceivable that any persons under such circumstances should refuse legal assistance, unless some strong influence was at work to dissuade them from accepting it? Who had any interest in dissuading them except Tedesco and Nicolay? Nicolay had originally made the charge, and Tedesco had preferred it. They both had the ordinary detective's belief in guilt and zeal for conviction. Tedesco appears at every turn in the transaction resisting all attempts of any counsel to see the aliens. He contradicts absolutely Mr. Bacon's testimony that, when he applied to see Mrs. Bosny, Tedesco went and found her, and was seen at the end of the corridor arguing vehemently with her on some subject. Mr. Bacon I believe to be an honorable member of the bar, in whose word, whether given under oath or not, I should place implicit credence. If Tedesco had admitted that such an occurrence had taken place, and explained it, his explanation would have been entitled to consideration, but, when he denies absolutely that any such occurrence took place, I have no doubt that he was testifying deliberately to an intentional untruth. His entire testimony impressed me unfavorably, and in my opinion no part of his testimony is entitled to any weight except those parts which are inherently probable or are corroborated. I think that the charge in this proceeding is established, and that it is a fact that Tedesco by a course of constant persuasion and intimidation prevented these aliens from engaging counsel to represent them in the proceeding.

The question of the guilt of the aliens is strictly not material in this proceeding. But there is enough evidence before me to make it doubtful. Mr. and Mrs. Bosny occupied a small apartment on Sixth avenue. Mrs. Bosny is a masseuse. She keeps there what she calls a massage parlor. She had one girl with her. Such places are sometimes disreputable and sometimes not. Evidence was given in the case, mostly from tainted sources, tending to show that the place was actually a place of prostitution. This she and her husband deny. The business conducted at this massage parlor, whether reputable or disreputable, was apparently wholly conducted by Mrs. Bosny. The evidence is that Mr. Bosny is a mechanic, who worked in a garage. If the business conducted by Mrs. Bosny was a disreputable one, there is not a shred of evidence in the case that Mr. Bosny knew it, or took any part in it. The only ground for suspicion against him is the fact that he lived with his wife in the apartment. With the application for the writ were presented the affidavits of four persons, who all depose that they are well acquainted with the aliens, and that the aliens are respectable persons, following honest callings. Most of these affiants were called and testified orally on the hearing before me, and they impressed me as worthy people and truthful witnesses. If the aliens had retained counsel in the proceeding before the inspector, the counsel would have undoubtedly produced these witnesses. Their evidence would have been taken and included in the record submitted to the Secretary of Commerce and Labor. The aliens were entitled to have such evidence offered in their behalf, and to have it considered, especially in view of the fact that the business which Mrs. Bosny claimed to be conducting is often a cloak for a disreputable business. The mere fact that she was engaged in such a business would tend to make many persons assume that she was guilty, and that the evidence of herself and her husband and of any witnesses whom she might produce would probably be false.

My conclusion is that these aliens by the influence of the inspector who was hearing their case were dissuaded and intimidated from exercising their right to be represented by counsel; that the proceedings therefore were fatally irregular; that the Secretary's order of deportation based upon them is therefore invalid, and their present detention under such order illegal.

I direct that the petitioners be discharged.