WHITFIELD, Immigrant Inspector, et al. v. HANGES et al.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1915.)

No. 4175.

*(Syllabus by the Court.)*

1. HABEAS CORPUS ☞23—DEPORTATION.

Where an alien is deprived of his liberty, or is about to be deported, by means of the abuse of the discretion, or the arbitrary action, of an immigration inspector, or other executive officer, or without a full and fair hearing on the charges against him, the power is conferred and the duty is imposed upon the courts of the United States to issue a writ of habeas corpus and relieve him.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. ☞23.]

2. ALIENS ☞54—CONSTITUTIONAL LAW ☞252—DUE PROCESS—DEPORTATION —FAIR HEARING—REQUISITES.

An alien, as well as a citizen, is protected by the universal principle that no person shall be deprived of life, liberty, or property without due

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

process, and his hearing must be in accord with "the fundamental principles which inhere in due process of law."

Indispensable requisites of such a hearing are that the course of proceeding shall be appropriate to the case and just to the party affected; that the accused shall be notified of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine witnesses against him; that after all the evidence against him is produced and known to him, he may have time and opportunity to produce evidence and witnesses to refute it; that the decision or order shall be governed by and based upon the evidence at the hearing, and that only; and that it shall not be without substanstantial evidence taken at the hearing to support it.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☜54; Constitutional Law, Cent. Dig. §§ 728–731; Dec. Dig. ☜252.]

3. ALIENS ☜54—DEPORTATION PROCEEDINGS—FAIR HEARING—WHAT CONSTITUTES.

That is not a fair hearing in which the inspector chooses or controls the witnesses, or prevents the witnesses the accused desires from appearing or testifying.

Where an inspector acquires, or has such complete control of important witnesses in a case that they will not testify without his call or request, and will do so upon his call or request, his refusal, on the request of counsel, to call or request them to testify prevents the accused from obtaining the benefit of their testimony as effectually as a prevention by physical force or prohibition.

·[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☜54.]

4. ALIENS ☜44, 54—DEPORTATION PROCEEDINGS—RULES OF SECRETARY—VALIDITY—FAIR HEARING.

Although the rule of the Secretary be fair and just in appearance, yet if it is applied and administered by public authority with an ˙evil eye and an oppressive hand, so as to deprive a person of his fundamental rights, it is˙inconsistent with law and void.

The fixing by the inspector of the time when the alien may inspect the warrant, or the time when he may have counsel, so late as to deprive him of a substantial portion of the benefit of an inspection of the warrant, and of the benefit of counsel, is an abuse of discretion which renders the hearing unfair.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 102–104, 112; Dec. Dig. ☜44, 54.] ·

5. ALIENS ˙☜54—DEPORTATION PROCEEDINGS—JURISDICTION OF IMMIGRATION OFFICERS—REVIEW BY·COURTS.

Whether or not the weight of the evidence in substantial conflict sustains the charges against an alien is a question in the exclusive jurisdiction of the immigration officers and is not reviewable by the courts.

But administrative findings and orders quasi judicial in character are void if there was no substantial evidence to support them, or if they are contrary to the "indisputable character of the evidence." Whether or not there was any substantial evidence at the hearing to sustain a finding, order, or report of an immigration officer, to the effect that an alien is guilty of the charges against him, is a question of law the power and duty to determine which is vested in the courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☜54.]

6. ALIENS ☜54—DEPORTATION PROCEEDINGS—FAIR HEARING—HEARSAY AND RUMOR.

That is not a fair hearing in which the inspector after the hearing imports into the case and bases his finding and recommendation of deportation upon hearsay and rumor of facts, regarding which there was no, evi-

dence at the hearing, and which the accused had no notice of and no opportunity to refute.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

7. HABEAS CORPUS ☞50—RIGHT TO WRIT—PREMATURITY—DEPORTATION PROCEEDINGS.

Where an alien resident is deprived of his liberty in proceedings for his deportation under a finding and report of an inspector upon an unfair hearing which cannot support an order of deportation, the issue of a writ of habeas corpus is not premature or unauthorized, although the Secretary of Labor has not yet rendered his decision whether or not he shall be deported.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 48; Dec. Dig. ☞50.]

8. HABEAS CORPUS ☞92, 110—DEPORTATION PROCEEDINGS—TRIAL DE NOVO—BAIL.

Where it is decided, after a hearing on a writ of habeas corpus, that the alien is deprived of his liberty after an unfair hearing, which cannot sustain an order of deportation, the court may, and it should, proceed to try de novo the question whether or not he is guilty of the charges against him before absolutely discharging him, and meanwhile it may admit him to bail.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87-96, 99; Dec. Dig. ☞92, 110.]

Appeal from the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Habeas corpus by George Hanges and others against S. L. Whitfield, Immigrant Inspector, etc., and others. Petitioners were ordered discharged (209 Fed. 675), and defendants appeal. Remanded, with directions.

F. A. O'Connor, U. S. Atty., of New Hampton, Iowa (Grover M. Neese, Asst. U. S. Atty., of Ft. Dodge, Iowa, on the brief), for appellants.

J. E. Williams, of Mason City, Iowa (Williams & Breese and Rule & Shipley, all of Mason City, Iowa, on the brief), for appellees.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SANBORN, Circuit Judge. George Hanges, Demetrios Lamper, Steve Pantza, and Peter Francas, citizens of Greece, were resident aliens who had been admitted to the United States pursuant to its acts of Congress prior to 1907. Two of them owned and operated the Main Café in Mason City, Iowa, where they had lived for years, and two of them were employed in the café. They were arrested by the immigrant inspector on October 24, 1913, and such proceedings were had that he found them guilty, recommended their deportation, and held them in confinement in the charge of the sheriff when, on their petition, the court below issued a writ of habeas corpus and, after a return thereto, an answer to the petition, and a full hearing, ordered their discharge. The inspector has appealed from this order on the grounds that the hearing of the appellees was full and fair, and that he committed no abuse of discretion or arbitrary action.

The deportation of the appellees was recommended by the inspector, and they were held in confinement under his finding that they were guilty of the charge that they were aliens employed by or in connection with a music or dance hall, or other place of amusement, habitually frequented by prostitutes, or where prostitutes gather, that they were aliens connected with the management of a house of prostitution, and that they were aliens found receiving, sharing or deriving benefit from a part or the whole of the earnings of prostitutes. Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899, as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264 (Comp. St. 1913, § 4247). Before entering upon a review of the proceedings of the inspector, the hearing he gave to the appellees, and the finding and recommendation of deportation he made to his superior, under which appellees were held, it is well to call to mind the rules and principles which govern proceedings in cases of this nature.

[1] A full and fair hearing on the charges which threaten his deportation and an absence of all abuse of discretion and arbitrary action by the inspector, or other executive officer, are indispensable to the lawful deportation of an alien. Where, by the abuse of the discretion or the arbitrary action of the inspector, or other executive officer, or without a full and fair hearing, an alien is deprived of his liberty, or is about to be deported, the power is conferred and the duty is imposed upon the courts of the United States to issue a writ of habeas corpus and relieve him. The Japanese Immigrant Case, 189 U. S. 86, 100, 101, 23 Sup. Ct. 611, 47 L. Ed. 721; Chin Yow v. United States, 208 U. S. 8, 10, 12, 13, 28 Sup. Ct. 201, 52 L. Ed. 369; Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 Sup. Ct. 734, 56 L. Ed. 1165; Ex parte Petkos (D. C.) 212 Fed. 275; United States v. Chin Len, 187 Fed. 544, 109 C. C. A. 310; United States v. Williams (D. C.) 185 Fed. 598, 604; United States v. Williams (D. C.) 193 Fed. 228, 231.

[2] An alien, as well as a citizen, is protected by the prohibition of deprivation of life, liberty, or property without due process and the equal protection of the law. This principle is universal. It applies "to all persons within the territorial jurisdiction of the United States without regard to any differences of race, of color, or of nationality." Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220; U. S. Rev. St. § 1977 (2 Comp. Stat. 1913, § 3925).

An alien is entitled to a hearing upon and a decision of the charge that he has violated the acts of Congress and is therefore liable to deprivation of his liberty and deportation, according to "the fundamental principles that inhere in due process of law." It is not competent for an inspector, or the Secretary of Labor, or any executive officer—

"arbitrarily to cause an alien who has entered this country and has become subject in all respects to its jurisdiction and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him an opportunity to be heard upon the questions involved, his right to be and remain in the United States. No such arbitrary power con exist where the principles involved in due process of law are recognized." Japanese Immigrant Case, 189 U. S. 86, 100, 101, 23 Sup. Ct. 611, 47 L Ed. 721; Wong Wing v. United States, 163 U. S. 228, 237, 238, 239, 16 Sup. Ct. 977, 41 L. Ed. 140.

[3] Indispensable requisites of a fair hearing according to these fundamental principles are that the course of proceeding shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he may have time and opportunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it; that the decision shall be governed by and based upon the evidence at the hearing, and that only; and that the decision shall not be without substantial evidence taken at the hearing to support it. In re Rosser, 101 Fed. 562, 567, 41 C. C. A. 497; In re Wood & Henderson, 210 U. S. 246, 254, 28 Sup. Ct. 621, 52 L. Ed. 1046; Interstate Commerce Commission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 91–93, 33 Sup. Ct. 185, 57 L. Ed. 431; Ex parte Petkos (D. C.) 212 Fed. 275–278; United States v. Sibray (C. C.) 178 Fed. 144, 149. That is not a fair hearing in which the inspector chooses or controls the witnesses, or prevents the accused from procuring the witnesses or evidence or counsel he desires. Chin Yow v. United States, 208 U. S. 8, 11, 12, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Sibray (C. C.) 178 Fed. 144, 149; United States v. Williams (D. C.) 185 Fed. 598, 604; Roux v. Commissioner of Immigration, 203 Fed. 413, 417, 121 C. C. A. 523.

[4] The Secretary of Labor is authorized to make or approve such rules "not inconsistent with law" for the enforcement of the immigration laws as he deems desirable. Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, 36 Stat. 263 (Comp. St. 1913, § 4244), and Act March 4, 1913, c. 141, 37 Stat. 736 (Comp. St. 1913, § 932). Rule 22 of the Department of Labor provided in effect that the inspector prior to any arrest might procure the best proof that could be obtained to the effect that the aliens belonged to one or more of the classes subject to deportation after entry; that he might state the facts evidenced by this proof and apply for a warrant of arrest; that telegraphic application for such a warrant might "be resorted to only in case of necessity"; and that it must state that the usual written application had been made and mailed and the substance of the facts and proof contained therein. The inspector had no authority to administer an oath in the cases in hand. His power so to do is limited to administering oaths touching the right of any aliens to enter the United States. Act Feb. 20, 1907, c. 1134, § 24, 34 Stat. 906 (Comp. St. 1913, § 4273). Nevertheless, between October 7 and October 23, 1913, the inspector gathered, mainly by the use of police officers of Mason City, a large number of prostitutes in the grand jury room in that city, and in the presence of the captain of police, or some other police officer, there questioned them, wrote down in narrative form purported statements made by them, went through the form of administering oaths to them, and on these statements applied for and obtained a telegraphic warrant for the arrest of the appellees, although they were permanent residents, two of them property owners and business men of Mason City, and there seems to have been no necessity

whatever for desperate haste. One of these women testified that she refused to go to the grand jury room, whereupon a policeman came after her with an automobile, told her that he had a warrant for her arrest in the auto, and that his orders were to take her if she had to be taken in pieces. She then submitted and was carried to the grand jury room, where she testified that she was examined before Campbell, the captain of police, and the inspector, and that both took part in the examination. The inspector and Campbell, however, denied that Campbell participated in the examination, but admitted that he was present.

Rule 22, subd. 4 (a) provides that upon receipt of the warrant of arrest the alien shall be taken before the person or persons therein described and granted a hearing to enable him to show cause, if any there be, why he should not be deported, and that in the discretion of the immigration officer in charge he may, pending determination of his case, be taken into custody or allowed to remain in some place deemed by such officer secure and proper, and that—

"(b) during the course of the hearing the alien shall be allowed to inspect the warrant of arrest, and all the evidence on which it was issued, and at such stage thereof as the officer before whom the hearing is held shall deem proper, he shall be apprised that he may thereafter be represented by counsel. * * * If counsel be selected he shall be permitted to be present during the further conduct of the hearing, to inspect and make a copy of the minutes of the hearing, so far as it has proceeded, and to offer evidence to meet any evidence theretofore or thereafter presented by the government. * * * (c) At the close of the hearing the full record shall be forwarded to the Bureau, together with any written argument submitted by counsel and the recommendations of the examining officer and the officer in charge as to whether or not a warrant for deportation shall issue."

The appellant received a telegraphic warrant of arrest, caused the appellees to be arrested, and was examining one of them and with his employés, Capt. Campbell and another police officer, was holding them in confinement and preventing them from seeing or consulting with any other person, when their counsel appeared and demanded to see and consult with them and to take part in the examination. The inspector refused this request, permitted no one to see and consult with them until after he had examined each of them in secret. After their examination was completed he permitted them for the first time to see any one but himself and the police officers and to have counsel and to introduce the testimony of witnesses. It will be noticed that the rule gives the inspector no authority secretly, in the presence of no one but himself and his police officers, whose presence and power unavoidably places the defenseless alien under fear and restraint, to examine or question him. It is limited to giving authority to the inspector to give the alien a hearing to enable him to show cause why he should not be deported, and by its terms it excludes a secret examination of the alien to extort a confession or evidence unfavorable to him. The provisions of the rule that the inspector shall grant the alien a hearing, that during the hearing he shall be permitted to inspect the warrant, and that at such stage thereof as the officer deems proper he shall be permitted to have counsel were made for the benefit of the alien for the purpose of giving him a fair trial. The liberty, and the property also, for if he is imprisoned and deported he must lose his business and sacrifice his

property, of a permanent resident alien, like the appellees, as well as their deportation, are involved in the issue, and these provisions of the rule should be liberally construed to accomplish their plain purpose. To the same end the discretion of the inspector in determining when the alien shall inspect the warrant and when he shall have counsel should be exercised, so that his hearing shall be full and fair. A denial of permission to him to see the warrant and to have counsel until within five minutes of the close of the hearing would be a clear abuse of discretion, and would render the provisions of the rule as administered "inconsistent with law" and void. Although a law or rule be fair and just in appearance, yet if it is applied and administered by public authority with an evil eye and an oppressive hand, so as to deprive a person of his fundamental rights, it cannot be sustained. Yick Wo v. Hopkins, 118 U. S. 356, 374, 6 Sup. Ct. 1064, 30 L. Ed. 220; Henderson v. Mayor of New York, 92 U. S. 259, 23 L. Ed. 543; Chy Lung v. Freeman, 92 U. S. 275, 23 L. Ed. 550; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145.

One of the objects of this rule was to give, not to deprive, the alien of the benefit of counsel. The time when an alien, who is ordinarily ignorant of the law, of legal procedure and of his rights, may derive the most benefit of counsel is when he is arrested and his hearing begins. It would have been no abuse of the discretion of the inspector to have permitted the appellees to have counsel to advise them immediately upon their arrest, and to have permitted them and their counsel to inspect the warrant of arrest, to be present and to take part in the proceedings at and after the first stage of the examination and hearing of the aliens. Such a course would have been in accord with the fundamental principles of English and American jurisprudence consistent with the law, and it should have been pursued. The refusal of the inspection of the warrant of arrest and the refusal to permit the aliens to see and consult their counsel before, and to permit them to participate in the proceedings at, their examination directly tended to prevent a fair hearing upon the charges against them.

[5] Whether or not the weight of the evidence, in substantial conflict at the hearing, sustained the charges against the appellees is a question of fact within the exclusive jurisdiction of the officers of the Department of Labor, and the courts, in the absence of fraud or mistake, are without jurisdiction to review or reverse their finding thereon.

But whether or not there was any substantial evidence at the hearing in support of those charges and of the finding of the inspector that they were proved, and of his recommendation that the aliens be deported, under which the appellees were being deprived of their liberty, is a question of law, the power and duty to determine which are vested in the courts, and any injurious error in deciding that question by any executive or quasi judicial officer or tribunal is reviewable and remediable by them. Administrative orders and findings quasi judicial in character are void if the finding is contrary to the "indisputable character of the evidence." School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 108, 23 Sup. Ct. 33, 47 L. Ed. 90; Interstate Commerce Com-

mission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 91, 33 Sup. Ct. 185, 57 L. Ed. 431, and cases there cited; Howe v. Parker, 190 Fed. 738, 746, 111 C. C. A. 466, 474, and cases there cited.

For the purpose of determining the question of law whether there was any substantial evidence to support the finding and recommendation of the inspector the evidence in this case has been carefully read and examined, and the irresistible conclusion is that there was no such evidence at the hearing, and that the undisputed evidence was that the charges against the appellees were baseless. This state of things resulted from the fact that the government introduced no evidence whatever at the hearing in support of the charges, the appellees under oaths administered by the inspector introduced their own testimony on which they were cross-examined by the inspector, and the testimony of 15 other witnesses on which they were cross-examined by the inspector, all of which tended to show that the charges were not true. Business men of Mason City and boarders at the Main Café of the appellees came to say that their restaurant was orderly and respectable, was patronized by all classes of people, business men, professional men, clerks, and that they never saw any evidence of the truth of the charges against the aliens. For example, J. C. Buchanan testified that he was 41 years of age; that he had been either a deputy sheriff or a police officer in Mason City most of the time from 1907 to 1913; that from February 13 to May 20, 1913, he was a police officer; that during these three months he passed appellees' Main Café two or three times each night; that he reported to the police department from it each night; that during March his beat extended past it; that its reputation was good; that it was patronized by the general run of people; that he had eaten there; that he had taken his wife to midnight lunches there several times; that at these times there were other people in the restaurant; that he certainly would not have taken his wife there if he had thought the place disreputable; that he noticed the conduct of the employés and patrons, and saw nothing there disreputable or disorderly.

During the hearing the inspector permitted counsel for the appellees to read the statements he and the police officers had drawn from the prostitutes before the arrest was made, but neither he nor the government offered or introduced these statements in evidence, nor would they have constituted evidence if offered, because, since the inspector had no authority to administer an oath, they were not sworn to, because they were the statements of the prostitutes extracted in secret under the ever-present fear which the call or seizure by police or other officers of persons of their character unavoidably imposes upon them, and because these women had not been called to the hearing and the appellees had no opportunity to cross-examine them. These women were at the command of the inspector. He called them by means of the police, and he had the power to call them again. The record convinces that he or his servants, the police officers, caused them to be notified that they were not required to respond to the call of the appellees. During the hearing counsel for the appellees requested the inspector to call them in order that the counsel for the appellees might examine them, re-

quested that in the interest of a fair hearing he exercise the same power to procure evidence of the truth from the same parties that he had exercised to procure statements from them against the appellees. The appellees had no right to a subpœna and no other method to get these women to come and testify, but the inspector refused to call them. The chief of police, and Campbell, the captain, were present at the hearing. Counsel for the appellees requested each of them to take the stand and testify. The chief refused to do so, but said he might do so if the inspector requested him. Campbell said he would testify if the government man allowed him to. Counsel for the appellees asked the inspector to assist in developing the truth by requesting the officers to testify. He refused, and they did not testify, except at the subsequent call of the inspector in rebuttal, and then only to matters not relevant to the charges against the aliens. When an inspector acquires or has such complete control of important witnesses in a case that they will not testify without his call or request, and will do so upon his call or request, his refusal on the request of the accused to call or request such witnesses to testify prevents the accused from obtaining the benefit of their testimony as effectually as a prevention by physical force or prohibition; and that is not a fair hearing in which the inspector with his control of important witnesses takes their statements in a secret ex parte examination before himself prior to the hearing, and then refuses the request of the accused to call them, or to request them to testify at the hearing, and thereby deprives the accused of the opportunity to examine or cross-examine them and to have the benefit of their testimony. Chin Yow v. United States, 208 U. S. 8, 11, 12, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Sibray (C. C.) 178 Fed. 144, 149; United States v. Williams (D. C.) 185 Fed. 598, 604; Roux v. Commissioner of Immigration, 203 Fed. 413, 417, 121 C. C. A. 523.

After the hearing the inspector made and forwarded his report and recommendation to the effect that the appellees were guilty of the charges, and that they should be deported. This report states the evidence on which it is founded, and discloses the fact that it is based, not on the evidence at the hearing, but on the statements of the prostitutes extracted before the arrest, which are condensed and recited in the report, and on rumors and hearsay which are set forth in the report, in support of which there was no evidence in the case, of which the accused had no notice and which he had no opportunity to refute by evidence or otherwise. For example, there was no evidence or mention before or at the hearing of these and many other statements in the report of the inspector regarding the witnesses for the accused:

"I was informed that witness J. C. Buchanan only served about four months on the police force altogether at different times; that he was discharged twice from the police force for inefficiency, and also discharged twice from the sheriff's office when he was serving as deputy, for overindulgence in liquor and inefficiency. * * * I was informed that A. M. L. Urdangen, who is a Jew, has a bad record from other towns where he has been located in business, and that the fire insurance companies would allow him little insurance because of his having had numerous fires."

222 F.—48

Here is another statement unsupported by any evidence, and not mentioned at the trial, a statement illustrative of the basis of the finding and recommendation of the inspector:

"I inclose herewith a newspaper article taken from the Mason City Gazette of November 5, 1913, showing that the body of the murdered child of Ada Burgess has been removed from its burying place, and it is believed to be the work of Greeks, friends of Louis Chirikos. The police officers tell me they have had a great deal of trouble with the Greeks of Mason City."

[6] That was not a fair hearing in which. the inspector after the hearing imported into the case and based his finding and recommendation of deportation on hearsay and rumors of alleged facts which there was no evidence to support, and which the accused had no notice of and no opportunity to refute at the hearing. Interstate Commerce Comm. v. Louisville & Nashville R. R. Co., 227 U. S. 88, 93, 33 Sup. Ct. 185, 57 L. Ed. 431; Ex parte Petkos (D. C.) 212 Fed. 275, 277, 278. The remarks in the opinion of the Supreme Court in the Louisville & Nashville Railroad case at page 93 are apt, persuasive, and applicable here. The Commerce Act June 18, 1910, c. 309, § 12, 36 Stat. 551 (Comp. St. 1913, § 8583) gave the Commission power to gather the necessary information to make rates and to discharge other duties of the Commission, and the power after a hearing to find and make the rates. The Commission contended that its findings after the hearing must be presumed to be supported by the informaton it had acquired under section 12, pursuant to the act, before the hearing, although the evidence of this information had not been formally introduced at the hearing. "But," said the Supreme Court, "such a construction would nullify the right to a hearing; for manifestly there is no hearing when the party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refute. The information gathered under the provisions of section 12 [like the information gathered by the inspector before the arrest] may be used as a basis for instituting prosecutions for violations of the law, and for many other purposes, but is not available, as such, in cases where the party is entitled to a hearing. The Commission is an administrative body and, even where it acts in a quasi judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. Int. Com. Comm. v. Baird, 194 U. S. 25, 24 Sup. Ct. 563, 48 L. Ed. 860. But the more liberal the practice in admitting testimony the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the commissioners cannot act upon their own information, as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents, and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown, but presumptive-

ly sufficient, information to support the finding. United States v. Baltimore & Ohio S. W. R. R., 226 U. S. 14, 33 Sup. Ct. 5, 57 L. Ed. 104."

And because the inspector arbitrarily prevented the aliens from consulting their counsel and arbitrarily prevented their counsel from being present and participating in the hearing until after the inspector had examined the aliens in secret, while he and the police officers held them in confinement; because there was no substantial evidence at the hearing in support of the charges against them; because the inspector prevented the accused from procuring testimony of important witnesses; because the inspector based his findings and recommendation of deportation on hearsay that was not in evidence at the hearing, and much of which the accused had no notice of and no opportunity to refute at the hearing—the conclusion is that the court below fell into no error and committed no mistake in its finding that the hearing of the accused was unfair and unjust and entitled the appellees to the relief of the court.

[7] But counsel for the inspector contend that the action of the court was premature because the final order of deportation had not been issued by the Secretary of Labor, and they invoke the decision of the Supreme Court in United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917. In that case the inspector had decided that a person was not entitled to enter the United States, the law gave him an appeal from that decision to the Secretary, he had not taken the appeal, and the court held in analogy to the rule in Ex parte Royall, 117 U. S. 241, 251, 252, 6 Sup. Ct. 734, 29 L. Ed. 868, that, "save under exceptional circumstances" (194 U. S. 168, 24 Sup. Ct. 621, 48 L. Ed. 917), the writ of habeas corpus should be denied, unless the accused has appealed to the Secretary and obtained a final decision. There are, however, reasons why this decision is not controlling in the case at bar. First, in that case the alien had the right to an appeal from the finding and decision which had been made by the inspector. In the case in hand the finding and recommendation of the inspector and the evidence go forward to the Secretary of Labor at Washington, and upon these he decides the case and orders the deportation or discharge of the prisoners, and there is no appeal. Second, there are two decisions of the Supreme Court and one decision of a Circuit Court which have come to our attention, to the effect that a person confined under the unauthorized decision of the inspector may have the benefit of a writ of habeas corpus and be released, although he has not availed himself of his right to appeal. Gonzales v. Williams, 192 U. S. 1, 13, 15, 24 Sup. Ct. 171, 48 L. Ed. 317; United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890; Ex parte Koerner (C. C.) 176 Fed. 478, 479. Third, it is conceded in Sing Tuck's Case and in Ex parte Royall that in exceptional cases, in cases of urgency (194 U. S. 168, 24 Sup. Ct. 621, 48 L. Ed. 917; 117 U. S. 241, 251, 252, 6 Sup. Ct. 734, 29 L. Ed. 868), the writ may issue, and the prisoner may be released on habeas corpus without pursuing another remedy to the end. The case at bar was one of urgency. Prominent alien residents, business men, and their employés were con-

fined pursuant to an unfair hearing and an unwarranted finding and recommendation of deportation by the inspector. The deprivation of their liberty was present, instant, and continuing. Their liberty and some of their property were necessarily at stake. If by the finding and report of the inspector the Secretary should be misled, and should issue an order of deportation, that order might, and probably would, be issued to the inspector who arrested them, and he might deport them, as he examined them, without permitting them to communicate with any one, and thus render them remediless. Again, no order of deportation ever could be sustained upon the proceedings and hearing in this case. Refusal to issue the writ and consider their deprivation of liberty would be, in effect, to prolong the period of that deprivation. The only certain remedy the accused had before they might be seized and deported was a writ of habeas corpus before the possible decision and order of deportation came. The circumstances of this case warranted, and law and justice (Revised Statutes, § 761 [Comp. St. 1913, § 1289]) required, the issue of the writ and the finding and decision of the court below, and they were neither unauthorized nor premature.

[8] The order of the court below was that the appellees be discharged without prejudice to the right of the Bureau of Immigration to proceed against them in a lawful manner to prove, if it could do so, the grounds alleged in the warrant of arrest. The practice approved by the Supreme Court and generally prevailing, however, seems to be that the court which takes jurisdiction and custody of the alien under the writ of habeas corpus and finds that his hearing has been unfair retains custody and jurisdiction of him and of the case, and tries on the merits de novo on evidence introduced before that court the question whether or not the alien is guilty of the charges made against him in the warrant of arrest before making his discharge absolute. Meanwhile the court has ample power to admit the alien to bail or to take his own recognizance. Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Williams (D. C.) 193 Fed. 228, 231, 232; In re Can Pon, 168 Fed. 479, 483, 484, 93 C. C. A. 635; Ex parte Petkos (D. C.) 212 Fed. 275, 278; Ex parte Koerner (C. C.) 176 Fed. 478, 479.

Let the case be remanded to the court below, with directions to modify the order from which the appeal was taken to conform to this practice, and to proceed further in accord with the views expressed in this opinion.