## Citizenship Requirements of the Liquor Code

PACKEL, Attorney General, April 30, 1974.—It has been brought to our attention that certain corporate licensees of the Liquor Control Board may be employing resident aliens as officers of such corporations in apparent contravention of the United States citizenship requirements of the Liquor Code of April 12, 1951, P. L. 90, as amended, 47 PS §4-403(c). Question is now raised whether or not the Liquor Control Board should invoke its statutory authority to revoke any and all licenses held by such corporations under the provisions of the Liquor Code, secs. 4-403(a) and (c) which authorize the board to revoke licenses where a corporate licensee has an officer who is not a United States citizen. It is our opinion, and you are hereby advised that the board shall not take any action to revoke such licenses on the ground that the licensee has an officer who is a resident alien inasmuch as the citizenship requirement of the Liquor Code, 47 PS §4-403, is in contravention of Federal law, 42 U.S.C. §1981, and the Fourteenth Amendment.[1]

---

[1] As early as 1933 and again in 1935, the Attorney General of the State of New York held that similar citizenship requirements

The Liquor Code provides for a United States citizenship requirement for applicants for hotel, restaurant and club liquor licenses and establishes that subsequent violation of such standards is also grounds for revocation of a license already issued:

"(b) If the applicant is a natural person, his application must show that he is a citizen of the United States.

"(c) If the applicant is a corporation, the application must show that . . . all officers, directors and stockholders are citizens of the United States, and that the manager of the hotel, restaurant or club is a citizen of the United States": 47 PS §4-403(b) and (c).

Question is now raised about the validity of such citizenship restriction in light of 42 U.S.C. §1981 and the Fourteenth Amendment of the United States Constitution.

42 U.S.C. §1981, formerly, 8 U.S.C. §41, provides as follows:

"All persons within the jurisdiction of the United States shall have . . . full and equal benefit of all laws . . . and shall be subject to like punishment, pains, licenses . . . and to no other."

In Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L. Ed. 1478 (1948), the court held that, although this statute was originally passed to guarantee black residents equal benefit of the laws, the language of the statute clearly guaran-

in New York's Alcoholic Beverage Control Law were unenforceable under United States treaty obligations and the Supremacy Clause of the United States Constitution. See 1933 Op. N.Y. Attorney General 94 (October 9, 1933); and 1935 Op. N.Y. Attorney General 133 (May 15, 1935). Since that time, the United States Supreme Court has used 42 U.S.C. §1981 and the equal protection clause of the Fourteenth Amendment to achieve that same result. Consequently, this opinion will not rely on United States treaty obligations in discussing the question of alien rights.

tees alien residents the same rights within the States as nonalien residents. See also Whitfield v. Harges, 222 F. 745 (1915); and Martinez v. Fox Valley Bus Lines, 17 F. Supp. 576 (1936). The question must now be answered whether or not the Pennsylvania Liquor Code which, in ultimate effect, establishes two sets of standards for applicants for liquor licenses, one for citizens and another for aliens, can stand in light of Federal law which mandates that aliens within the jurisdiction of the United States are guaranteed the same benefits of the laws as granted to nonaliens and further provides that alien residents shall be subjected to the same licensing laws as nonaliens and to no other.

The effect of Pennsylvania's citizenship require-ment of 47 PS §4-403 is to provide for an additional requirement for alien applicants for liquor licenses: naturalization pursuant to the terms and conditions as established by the United States Congress. Yet Con-gress decreed in 42 U.S.C. §1981 that aliens shall not be subjected to different regulatory standards when the States choose to exercise their power to issue licen-ses under the State police power. 47 PS §4-403(b) and (c) inevitably and invariably conflicts with Federal law regarding the treatment and regulations of aliens as enunciated in 42 U.S.C. §1981. Under the general principle of supremacy and also under the exclusive power of Congress to legislate for the purpose of con-trolling immigration, see Truax v. Raich, 239 U.S. 33, 42, 36 S. Ct. 7, 60 L. Ed. 131 (1915), inconsistent State laws must yield to the wisdom of Congress, and the requirements of U. S. citizenship of 47 PS §4-403(b) and (c) for applicants for liquor licenses must be held invalid.

In addition to the provisions of 42 U.S.C. §1981, the United States Supreme Court has consistently held

that the equal protection clause of the Fourteenth Amendment is, in itself, sufficient authority to strike down State laws which discriminate against aliens. In Truax v. Raich, 239 U.S. 33, 36 S. Ct. 7, 60 L. Ed. 131 (1915), the court struck down as unconstitutional an Arizona Anti-Alien Labor Law which required that employers must employ a work force of at least 80 percent native-born citizens of the United States. In writing for the majority, Justice Hughes observed that the Fourteenth Amendment guaranteed aliens equal economic opportunity, and an attempt by the State to regulate the rights of aliens to the benefit of their non-alien residents was unconstitutional:

"[State police power] does not go so far as to make it possible for the state to deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood. It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [XIV] Amendment to secure": 239 U.S. at 41, 36 S. Ct. at 10.

"The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work": 239 U.S. at 42, 36 S. Ct. at 11.

In the instant case, Pennsylvania law would impinge upon the economic equality of opportunity of aliens to earn a livelihood by dispensing and selling alcoholic beverages pursuant to State law, which prohibition is for the ultimate economic benefit of non-alien residents of the Commonwealth. This economic discrimination cannot stand in light of the holding of

Truax v. Raich, supra, and 47 PS §4-403(b) and (c) must be considered invalid.[2]

In Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L. Ed. 1478 (1948), the Supreme Court held that the California Fish and Game Commission could not lawfully refuse to issue California resident aliens commercial fishing licenses which were otherwise available to nonalien California residents. As Justice Hugo Black observed for the majority:

"The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws": 334 U.S. at 420, 68 S. Ct. at 1143.

More recently, the United States Supreme Court has handed down three landmark decisions regarding resident alien rights under the equal protection clause. In Graham v. Richardson, 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971), the court struck down Pennsylvania and Arizona statutes which conditioned State welfare benefits on United States citizenship. As observed by the majority, such ethnocentric re-quirements will be carefully scrutinized by a suspi-cious judiciary, and only where the State can con-vincingly demonstrate a compelling State interest will such requirements be upheld:

"But the Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject

---

[2] For other statements by the Supreme Court guaranteeing aliens economic equality, see Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 220 (1886), and Harisiades v. Shaugh-nessy, 342 U.S. 580, 72 S. Ct. 512, 96 L. Ed. 586 (1952).

to close judicial scrutiny": 403 U.S. at 371, 372; 91 S. St. at 1852.

In Sugarman v. Dougall, 413 U.S. 634, 93 S. Ct. 2842, 37 L. Ed. 2d 853 (1973), the court held that New York could not require United States citizenship as a condition precedent for employment with the State under the New York civil service law. Again, in In re Griffiths, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973), the court struck down a Connecticut statute which denied resident aliens the right to take the Connecticut bar examination solely because of alien citizenship as violative of the Fourteenth Amendment:

"Resident aliens, like citizens, pay taxes, support the economy, serve in the armed forces, and contribute in myriad other ways to our society. It is appropriate that a State bear a heavy burden when it deprives them of employment opportunities. We hold that the Committee, acting on behalf of the State, has not carried its burden": 413 U.S. at 722.

In order to justify the ethnocentric requirements of 47 PS §4-403(b) and (c), the Liquor Control Board must affirmatively demonstrate a compelling State interest in restricting licenses to individual citizens of the United States and to corporations where all officers, directors and shareholders are citizens of the United States. It appears that the citizenship requirement as it affects all directors, officers and shareholders of a corporation must be stricken down as overly broad on its face. As the citizenship requirement affects managers of a corporate applicant and natural persons applying on their own behalf, it appears that the citizenship requirements should be stricken down *absent* any substantial evidence offered by the board to indicate that alien managers and bar owners would notoriously violate the Liquor Code after receiving

their licenses.[3] Inasmuch as the board has never contended such to be the case, alien residents should be given the right to manage corporate establishments licensed by the board, to own such establishments in their own right, and to serve as officers of corporations licensed under the Liquor Code.[4]

In reaching this result, it is realized that the XXI Amendment recognizes the States' special constitutional interest in regulating the retail sale of liquor. See California v. LaRue, 409 U. S. 109, 93 S. Ct. 390, 34 L. Ed. 2d 342 (1972). As pointed out in Justice Rehnquist's opinion, where there is a high correlation between criminal activity and erotic sexual performance in clubs which serve liquor, the XXI Amendment can be used to prohibit behavior which otherwise would be protected under the free expression of ideas of the First Amendment. As pointed out in Justice Stewart's concurring opinion, however, the XXI Amendment does not permit total irrationality or invidious discrimination in such regulation:

---

[3] See, Veto Message of Governor Milton Shapp of March 1, 1974 (Veto No. 1) vetoing a proposed amendment to the Game Law which provided greater penalties for alien residents who violated the Game Law than for citizen residents who performed the same illegal acts.

[4] The Pennsylvania Attorney General's Office has consistently advised State agencies that United States citizenship requirements are unenforceable. See O.O. No. 92, Op. Pa. Atty. Gen. 177 (1971) on veterinarians; O.O. No. 112, Op. Pa. Atty. Gen. (March 15, 1972) on real estate brokers; O.O. No. 113, Op. Pa. Atty. Gen. (March 23, 1972) on physicians; O.O. No. 114, Op. Pa. Atty. Gen. (March 23, 1972) on pharmacists; O.O. No. 116, Op. Pa. Atty. Gen. (April 4, 1972) on practical nurses; O.O. No. 4 of 1973, Op. Pa. Atty. Gen. (Jan. 15, 1973) on scholarship applicants; and O.O. No. 9 of 1973, Op. Pa. Atty. Gen. (January 16, 1973) on teachers.

438

"This is not to say that the XXI Amendment empowers a State to act with total irrationality or invidious discrimination in controlling the distribution and dispensation of liquor within its borders": 409 U. S. at 120.

As indicated by the Supreme Court in Graham, Sugarman and Griffith cases, discrimination against alien residents is obviously irrational and invidious discrimination. Consequently, it must be concluded that the XXI Amendment does not authorize the legislature to discriminate against alien residents in liquor regulatory legislation.

In summation, it is our opinion and you are hereby advised that no further action shall be taken against corporate licensees who may employ resident aliens as officers or directors or whose shareholders may be aliens in violation of 47 PS §4-403(c) inasmuch as such citizenship requirements shall be treated as unconstitutional under the Fourteenth Amendment.